[No. 1328, August 30, 1910.]

## YOUNG & NORTON, et al., Appellants, v. M. C. HINDERLIDER, Appellee.

### SYLLABUS.

1. The power of the territorial engineer to reject an application "if in his opinion the approval thereof would be contrary to the public interest," is not limited to cases in which the project would be a menace to the public health or safety.

2. The mere fact that irrigation under the former project would cost more per acre than under the latter is not conclusive that the former project should be rejected.

3. Cause remanded to obtain facts through the water commissioners and territorial engineer, or by agreement of counsel, or otherwise, essential to a satisfactory decision of the cause.

Appeal from the District Court for San Juan County before JOHN R. McFIE, Associate Justice. Remanded to obtain further facts essential to satisfactory decision.

MARTIN & EDWARDS for Appellants.

The territorial engineer is the only proper authority to pass upon the practicability, public utility and general effectiveness of any proposed system of irrigation in this territory. Pueblo of Nambe v. Romero, 10 N. M. 58, 61; Newcombe v. White, 5 N. M. 435; Bull v. Southwick, 2 N. M. 321; McCarville v. Boyle, 89 Wis. 651; Howell v. Mills, 53 N. Y. 322; Mills v. Davis, 53 N. Y. 349; Appeal of Vaux, 109 Pa. St. 497.

The two elements of a valid appropriation of water are (a) diversion and (b) beneficial application to some useful purpose. There can be no private ownership of water of the public streams of this Territory. Land & Irr. Co. v. Gutierrez, 10 N. M. 177-240; New Mercer Ditch Co. v. Armstrong, 21 Colo. 357, 366; Combs v. Agricultural Ditch Co., 17 Colo. 146, 150.

E. C. ABBOTT and H. C. ALLEN for Appellee.

Priority in time shall give the better right. Laws 1907, p. 73, sec. 2.

Manner of determining reasonableness of rate for water delivered for irrigation. Wilterding v. Green, 4 Ida. 773, 45 Pac. 134; Boise City Irr. & L. Co. v. Clark et al, Co. Com., Ida., 121 Fed. 415; Slosser v. Salt River C. Co., 7 Ariz. 376, 65 Pac. 332; Gould v. Maricopa C. Co., Ariz., 376, 65 Pac. 598; Salt River Val. C. Co. v. Nelssen, Ariz., 85 Pac. 117.

## STATEMENT OF THE CASE.

On the first day of October, 1907, M. C. Hinderlider filed with the territorial engineer an application for a permit to appropriate 200 second feet of the flow of the La Plata river in San Juan County, New Mexico, and for the construction of a storage reservoir with a storage capacity of 12,406 acre feet for the purpose of reclaiming an irrigating about 14,000 acres of land in said county.

On December 20, 1907, Messrs. Young & Norton for themselves and others filed with the territorial engineer an application for a permit to appropriate the waters of the same stream in the same county and Territory, for the purpose of reclaiming and irrigating about 5,000 acres of land, being a part of the same land covered by the Hinderlider project. This last application included the construction of a storage reservoir with a storage capacity of 10,149 acre feet for the purpose of storing the flood waters of said river and applying the same to the reclamation of the said 5,000 acres of land.

After the publication of the notice required by law and on the 19th day of March, 1908, the said Young, Norton and others filed with the territorial engineer a protest against the approval of the said Hinderlider application.

That after a hearing before the territorial engineer and on July 20, 1908, he rendered an opinion sustaining said protest rejecting the Hinderlider application and approving the application of the protestants, the said findings and order of the said territorial engineer, omitting the caption, being in words and figures as follows:

The territorial engineer finds, from the evidence presented by oral testimony, at the hearing in the above matter, at Aztec, on the 10th day of April, 1908, from affidavits presented before and after said hearing, and from the official records:

First. That M. C. Hinderlider on the first day of October, 1907, filed with the territorial engineer an application for a permit to appropriate an amount equal to two hundred second feet of continuous flow during irrigation season, of public water from the La Plata river, for the purpose of irrigating 14,000 acres.

Second. That the survey necessary before making said application was made prior to the opening of the land for settlement, and that the application was asked for the purpose of appropriating said water by the forming of a company, the building of necessary construction works and the sale of water rights at a cost of $40 per acre on land under said project and that a large portion of said land is under the control of protestants who have entered or settled on the land.

Third. That on March 19, 1908, Young, Norton and twenty-two others filed protests against the granting of said application of M. C. Hinderlider and also against the granting of an application by Jay Turley and others.

Fourth. That the protestants Young and Norton and others, filed application for a permit to appropriate public waters from the same stream on the 20th day of December, 1907, with the intention of irrigating 5,000 acres.

Fifth. That Young and Norton et al., are actual settlers or entrymen on about 5,500 acres under the project, and that the above parties immediately after October 3, 1907, when the said lands were opened to entry by the U. S. government, employed surveyors to make surveys preparatory to making an application for a permit to appropriate, and that they used reasonable diligence in collecting data in the shape of maps and surveys, for the filing of said application at an early date.

Sixth. That the application of Young and Norton was not asked for speculative purposes, but with the intent of irrigating and developing the lands now settled or entered upon by said settlers.

Seventh. That the cost of their works can be built by Young and Norton, et al., for less than $20 an acre.

Eighth. That on the 25th day of October, 1907, Jay Turley and H. L. Hollister filed an application for a permit to appropriate water from said La Plata river to irrigate the lands owned by Young and Norton et al., and the engineer ordered of them a statement of their intended prices per water right for land under control by protestants, but statement of said prices was not filed in the office of the territorial engineer, but that he was informed verbally

that they would ask $35 an acre for water right upon said land, and

Ninth.   That the extent of the unappropriated flood waters available is not sufficient to irrigate more than five or six thousand acres.

Therefore, the engineer is of the opinion:

First.   That there is unappropriated water available for approximately five or six thousand acres.

Second.   That either the applicant or protestants, if their applications were approved, could and would complete their appropriation satisfactory to the Territory.

Third.   That the Young and Norton et al., project is more within the available water supply, making same more feasible.

Fourth.   That it would not be to the best interests of the public to approve the application of M. C. Hinderlider, thereby forcing the protestants to pay more than double price for their water rights.   The same conditions as to the public interest would also apply to the application of Jay Turley et al., in so far as the amount of water allowed in the approval of Young and Norton et al., application might be affected.

It is therefore ordered, that the application of Young and Norton be approved, as follows:

### APPROVAL OF TERRITORIAL ENGINEER.

The number of this permit is 107.

Date of receipt of first application, December 20, 1907.

Publication of notice completed and proof filed March 23, 1908.

Application recorded in Book A, page 107.

Approved this twentieth day of July, 1908.

This is to certify that I have examined the within application for a permit to appropriate the public waters of the Territory of New Mexico, and hereby approve the same.

The amount of water appropriated:

(a)  By diversion..............cubic feet per second.

(b)  By storage, 20,290 acre feet.

(c)  Remarks:   This application is limited to an annual appropriation of 20,290 acre feet and shall not be

exercised at such times that the same would be of detriment of prior valid rights to the use of water from said stream.

The construction of the within described works to be commenced not later than Jan. 1, 1909.

One-fifth of the work above specified to. be completed on or before July 20, 1909.

The whole of said work to be completed on or before July 20, 1910.

The time for application to beneficial use shall not be later than October 1, 1911.

Witness my hand this 20th day of July, 1908.

                    (Signed) VERNON L. SULLIVAN,
                                Territorial Engineer.

In the event of the failure of Young & Norton et al, to complete their appropriation according to the above approval, the applications of M. C. Hinderlider and Turley and others will be considered in routine of their priority of filing.

. . . . . . . . . . . . . . . . . . . . . . .

Santa Fe, New Mexico, July 20, 1908.

Thereupon the said Hinderlider appealed from the decision of the said territorial engineer to the Board of Water Commissioners of this Territory, which board after hearing all of the evidence offered by the parties and the argument of counsel, reversed the decision of the said engineer and directed him to approve the application of the said Hinderlider, the findings and order of said board being in words and figures as follows, to-wit:

STATEMENT.

It appears from the records in the office of the territorial engineer and from the applications, maps, plats, field notes and affidavits and other papers filed in the office of the territorial engineer and with the board, and from the testimony presented to the board at the several hearings: That on the first day of October, 1907, M. C. Hinderlider, filed with the territorial engineer an application for a permit to appropriate water from the La Plata river in San Juan County, New Mexico, to an amount equal to

two hundred second feet continuous flow during the irrigation season, for the purpose of irrigating 14,000 acres of land and for the construction of a storage reservoir with a capacity of 12,406 acre feet at one filing and the ditches and reservoirs necessary to carry out said project. That after publication of notice, a protest was filed by appellees Young and Norton et al, on March 19, 1908; and after a hearing on April 10, 1908, the territorial engineer sustained the protest and rejected the application of M. C. Hinderlider, at the same time approving the application for practically the same water, filed by John D. Young and Geo. N. Norton, two of the protestants, which application was filed in the office of the territorial engineer on December 20, 1907, and contemplated irrigating about 5,000 acres of land.

From this decision M. C. Hinderlider appealed to the board. The reasons alleged by the protestants for the rejection of Mr. Hinderlider's application were, that the protestants were actual settlers or entrymen on some of the land proposed to be watered; that the application of Mr. Hinderlider was not based upon actual surveys, measurements and field notes made by him, but upon surveys made by the United States Reclamation Service at the expense of the United States, and which he was not entitled to use for his personal benefit; and that the project contemplated by the application of Hinderlider was considerably more expensive than that contemplated by the application of Messrs. Young and Norton, and the rejection of the Hinderlider application and the approval of that of Young and Norton might enable the owners of the land in that neighorhood to obtain water rights at less cost.

In rejecting the application of Hinderlider and approving that of Young and Norton, the territorial engineer gives as his chief reason for his decision that the project of Young and Norton is more within the available water supply and therefore a more feasible project, and that it would not be to the best interests of the public to approve the application of Hinderlider, thereby forcing the protestants to pay a larger price for their water rights than they might have to pay under the project of Young and Norton.

At the hearing before the board, at Farmington, in San Juan County, and the subsequent hearing in Santa Fe, it was shown to the satisfaction of the board that the survey from which the maps, plats and field notes filed by Hinderlider were made, was an actual survey made under his direction, and at his expense by an engineer and assistants employed by him. It appears that the engineer, employed by Hinderlider, did retrace a ditch line previously surveyed by the United States Reclamation Service, using the government stakes whenever convenient, or wherever they were in place, but the testimony of the engineer and his assistant and the original field book kept by him in which the notes of his survey were recorded, showed conclusively that he did make an actual survey and that the plats, maps, and field notes filed by Hinderlider were taken from these notes. It was shown by the evidence, that Hinderlider and also the engineer employed by him to make this survey, had been in the employ of the U. S. Reclamation Service in making surveys in that neighborhood for an irrigation project which had been abandoned by the government, and the knowledge so obtained and the stakes of the abandoned government ditch line were undoubtedly of great assistance to them in making the subsequent survey; but it appears that they did not use the field notes of the government survey in any manner in preparing the application, maps, plats and field notes filed with the territorial engineer.

The engineer in his decision, based his action on the ground that the project of Young and Norton would be for the best interest of the public because it would enable people living in that vicinity and under the proposed ditch to purchase water at a less price than they might have to pay were the application of Hinderlider approved.

DECISION.

The board is of the opinion that the statute, section 28, chapter 49, laws of 1907, contemplates that the territorial engineer may reject an application if he finds that the project would be contrary to the public interest, in that it would be a menace to the public health or safety,

and not for the reason that a project described in an application subsequently filed might be more advantageous to the owners of private property in the neighborhood; and that it was not the intention of the legislature to vest in the territorial engineer or the board such discretionary powers as to authorize him or them to discriminate against a prior application in favor of one filed later, because one project would be less expensive than another to water users. The same principle should govern with respect to applications to appropriate water under the New Mexico statute as in the applications for entries of lands under the public land laws of the United States; the first application making a filing in compliance with the law should be recognized, and if he shall subsequently comply with the regulations and statutes, his application should be approved, unless the project is, in the opinion of the engineer, a menace to the public health or safety, or unless there is no water available under the application.

In the present case the testimony shows that there is unappropriated flood water available and that while it is claimed that the project of Young & Norton might be more advantageous to the protestants, nevertheless, the project described in the prior application is feasible and its approval would not be contrary to the public interest. The board believes that the interest of the owners of the land under the proposed ditches and reservoir who may desire to become water users under the project are amply protected by the provisions of law which require owners of such works to supply water at reasonable rates.

The board could take into consideration the question of benefits to the public from the construction of the respective projects, it would be manifestly more to the benefit of the public, being the people of the Territory of New Mexico, or the people of San Juan County, New Mexico, to have the larger project constructed which would furnish water to irrigate 14,000 acres, than a smaller one to cover only about 5,000 acres; and it would be exceedingly detrimental to the interests of all the people of the Territory if a bona fide application by one who had complied with all the requirements of the statute and the rules and regu-

lations established by the territorial engineer, were to be rejected upon such grounds in favor of an application subsequently filed. It is certainly to the interests of the Territory that outside capital be invited and encouraged to construct irrigation works in the Territory and that the law relating to water rights be consistently enforced so as to protect those who in good faith initiate such enterprises.

For the foregoing reasons the decision of the territorial engineer in rejecting the application of M. C. Hinderlider, and in approving the subsequent application of Young & Norton in so far as the same includes any rights covered by the prior application, is hereby reversed, and the territorial engineer is directed to approve the said application of M. C. Hinderlider.

(Signed) CHARLES SPRINGER,<br>
President, Board of Water Commissioners.

The protestants, Young, Norton and others appealed from the decision of the water commissioners to the District Court of San Juan County in which the cause was heard Nov. 17, 1909, on an agreed statement of facts, which is in words and figures as follows:

"1. On the 1st day of October, 1907, M. C. Hinderlider filed with the territorial engineer an application for a permit to appropriate 200 second feet of the flow of the La Plata river, in San Juan County, New Mexico, and for the construction of a storage reservoir with a storage capacity of 12,406 acre feet, all for the purpose of reclaiming and irrigating about 14,000 acres of land in said county and Territory.

"2. On December 20, 1907, these protestants filed with the territorial engineer an application for a permit to appropriate the waters of the same stream in the same county and Territory for the purpose of reclaiming and irrigating about 5,000 acres of land, being a part of the same lands covered by the Hinderlider project. The said application included the construction of a storage reservoir with a storage capacity of 10,149.3 acre feet, for the purpose of holding and storing the flood waters of said La Plata river and applying same to the reclamation of said 5,000 acres of land.

"3.   That on March 19, 1908, these protestants filed with the territorial engineer a protest against the approval of the said Hinderlider application, alleging among other things that the protestants are all actual settlers or entrymen upon the land proposed to be watered, aggregating 5,000 acres; that protestants believe that they can conduct water to their land at an approximate expense of $11 an acre, and that protestants are financially able to immediately proceed with the construction of the proposed ditch and reservoir; that if their application be allowed they will at once proceed with the construction of the said ditch and reservoir and will have their lands under water for the season of 1909; that they could not positively state what the water would cost per acre for their use on their lands, if they must purchase it from Mr. Hinderlider, but that they were credibly informed and believed that the cost of the same would be from $30 to $40 per acre; that the application of the said Hinderlider was made for speculative purposes and for the personal benefit of the applicant, while the application of protestants was made for the benefit of actual settlers upon the land.

"4.   That after a hearing, the territorial engineer, on July 20, 1908, rendered an opinion sustaining said project rejecting the Hinderlider application, and approving the application of protestants, findings as per copy of said decision herein filed.

"5.   That thereupon the said M. C. Hinderlider, appealed from the decision of said territorial engineer to the board of water commissioners of this Territory, which board, after hearing the evidence, and argument of counsel, reversed the decision of the said engineer, findings as per copy of their decision herein filed.

"6.   That the said M. C. Hinderlider is financially able to immediately proceed with the construction of the said ditch and reservoir.

"7.   From said decision of said board these protestants have taken this appeal to this court.

That court sustained and affirmed the decision of the board of water commissioners, to which action Young,

Norton and others excepted and brought the matter to this court on appeal.

## OPINION OF THE COURT.

ABBOTT, A. J.—We think the decision of the District Court was justified and probably required by the statement of facts on which it was heard, but we find that statement very incomplete and unsatisfactory as the basis of a decision in such a cause. If it were a matter of private interest alone, a question simply between two rival applicants ·for the right to use the waters in question, we should content ourselves with affirming the decision of the District Court. But the question is much broad-er than that, and includes the public interest as well, by the terms of the statute under which the territorial engineer, the water commissioners and the courts have jurisdiction of the subject matter.

The view apparently adopted by the water commissioners in their decision that the power of the territorial engineer to reject an application, "if in his opinion the approval thereof would be contrary to the public in-terest," sec. 29, is limited to cases in which the project would be a menace to the public health or safety is, we think, not broad enough.

There is no such limitation expressed in terms in the statute and we think not by implication. The declaration in the first section of the statute that the waters therein described are "public waters" and the fact that the entire statute is designed to secure the greatest possible benefit from them for the public, should be borne in mind.

It is, for instance, obviously for the public interest that investors should be protected against making worthless investments in New Mexico,· and especially that they should not be led to make them through official approval of unsound enterprises. If there is available, unappropriated water of the La Plata river for only five or six thousand acres of land, it would be contrary to the public interest that a project for irrigating fourteen thousand acres with that water should receive an official approval which would, perhaps, enable the promoters of it to market their scheme.

to sell stock reasonably sure to become worthless, and land which could not be irrigated, at the price of irrigated land. Such a proceeding would in the end result only in warning capital away from the Territory. The failure of any irrigation project carries with it not only disastrous consequences to its owners and to the farmers who are depending on it, but besides tends to destroy faith in irrigation enterprises generally.

It may be said that the territorial engineer could have approved the Hinderlider project for the number of acres which could be irrigated from it. He makes it clear, however, from his report, that the cost of the works for that project would be much greater than for works fit to irrigate the land which could really be irrigated from the available water there.

While that element is not conclusive on the question of public interest, we think it should be taken into account. It may be that, of the five or six thousand acres there which it is claimed can be irrigated at an expense of ten or twelve dollars per acre under the Young-Norton project, a thousand acres could be irrigated at five dollars per acre because of its being at a lower level or nearer the water than the other land. But that would not justify refusing to the owners of the other four or five thousand acres the privilege of irrigating their lands, under a plan which would increase the cost of irrigation to the owners of the thousand acres. And the same may be said of the Hinderlider project as compared with the Young-Norton project. The mere fact that irrigation under the former project would cost more per acre than under the latter is not conclusive that the former project should be rejected.

But the attempt to cover too much land may have gone so far that the cost of irrigation under that project would be so excessive that the owners of land under the project could not pay the water rates and farm their lands at a profit. The statute provides that the charges for irrigation shall be "reasonable" but what is reasonable in any case must depend largely on the cost of constructing and operating the irrigating works.

The agreed statement of facts on which the judgment of the District Court is based may be held to include by reference the findings of the territorial engineer and those of the board of water commissioners although it is not made clear that they are to be a part of the stipulated facts, as it should be if that was the intention of the parties. Even if they are to be considered we are still without proper material for a conclusion. The territorial engineer finds that the Young, Norton project is "better within the available water supply," but that furnished no reason why he should not have approved the earlier project for the amount of land there is water for. He does not find that the cost of water under the Hinderlider project would be prohibitory or excessive but only that it would be considerable greater per acre than under the Young-Norton project. The price which the owners of land can afford to pay for irrigation must depend in part on the use to which it can be put.

For ordinary farm crops forty dollars per acre for water might be prohibitory, while for fruit or garden truck in certain localities it might not be excessive. But neither the territorial engineer nor the water commissioners have touched on that point in their reports. The territorial engineer apparently bases his approval of the latter project as against the former on the fact that Young and Norton and their associates are actual settlers on the land while Hinderlider is not a resident of the territory. We do not say this circumstance should have no weight in determining the question of the public interest, but we think it should not outweigh the other considerations to which we have referred.

On the other hand, the water commissioners find that there is available unappropriated flood water of the La Plata river but do not find whether there is enough for fourteen thousand or any other number of acres, nor whether the cost of the Hinderlider project would be such as necessarily to make the irrigation charges under it prohibitory or excessive.

We find in Armijo v. County Commissioners, 11 N. M.

294, a precedent for the course which we think it advisable to pursue in this matter.

The cause is therefore remanded to the District Court to obtain facts through the water commissioners and territorial engineer, or by agreement of counsel or otherwise essential to a satisfactory decision of the cause.

It is not meant to limit the District Court to the precise points we have named, but to leave the matter open for the introduction of any facts bearing on the question of public interest. And the judgment of the District Court is set aside in order that it may on further consideration render such decision as it shall deem proper.