COMMONWEALTH POWER COMPANY, APPELLANT, v. STATE BOARD OF IRRIGATION, HIGHWAYS AND DRAINAGE, APPELLEE.

FILED NOVEMBER 12, 1913. No. 18,116.

1. **Waters:** IRRIGATION: "APPROPRIATION." Under that portion of the irrigation statutes of Nebraska (Comp. St. 1911, ch. 93a) which deals with the procedure necessary to procure water rights after the law of 1895 went into effect, the word "appropriation." used in its strictest sense, denotes an appropriation which has been legally initiated by the filing of an application with the state board of irrigation, highways and drainage, and the granting of a permit by that body, and completed by the construction of the works as specified therein, and the application of the water to a beneficial use within the time limited in the permit, or subsequent extensions. But, while this is the meaning of the word "appropriation" when used in the statute in its most exact and proper sense, it is often more loosely used to mean the contingent or inchoate right to an appropriation and the right of priority, derived under a permit from the state board.

2. ——: ——: APPLICATION: PRIOR RIGHT. A permit had been granted to an applicant for practically all the unappropriated water in a stream to be used for the development of power, which permit was still in force and effect. A subsequent application for the same amount of water, to be diverted above the proposed head-gate of the prior applicant, for the same purpose, and at a point in proximity thereto, was refused by the state board, for the reason that the rights asked were approximately the same as already granted under the prior application, and in conflict therewith. *Held*, That the action of said board and of the district

court in affirming its order in the premises were justified by the facts.

3. ———: ———: PAYMENT OF FEES. Under the provisions of section 8a, art. II, ch. 93a, Comp. St. 1911, it is the imperative duty of the secretary of the state board of irrigation, highways and drainage to pay the money received for fees for filings for water to the state treasurer. No right can be predicated as against the board by reason of the secretary complying with this direction.

APPEAL from the district court for Nance county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*C. C. Flansburg* and *Leonard A. Flansburg,* for appellant.

*Grant G. Martin, Attorney General,* and *George W. Ayres, contra.*

LETTON, J.

On September 30, 1912, the Commonwealth Power Company, appellant, filed its application No. 1,229 with the State Board of Irrigation, Highways and Drainage seeking to divert 2,700 second feet of the waters of the Loup river for power and other purposes, and at the same time paid the state engineer the lawful fees for such filing in the sum of $2,150. The board dismissed this application on November 25, 1912. From this dismissal an appeal was taken to the district court for Nance county, where the action of the state board was affirmed. From this judgment said company has appealed to this court.

As a result of an examination of applications previously granted for water from the Loup river for irrigation and power purposes, made by the state engineer, a citation was served upon all persons claiming a right to the waters of the river under these applications to show cause by a certain date why the permits granted should not be canceled and annulled. A hearing was had as specified. The Nebraska Power Company, appeared, claiming rights under a number of the applications. The Commonwealth Power Company, appellant; also appeared by its counsel

adversely to the Nebraska Power Company. On September 30, 1912, the whole matter was finally submitted on the evidence. On the same day the appellant filed application No. 1,229 and paid to the state engineer $2,150 filing fee. This sum was paid into the state treasury by the state engineer, as required by law, where it is still retained. On November 25, 1912, the board found that all applications under which the Nebraska Power Company claimed were lapsed, except application No. 709, as to which it found that a portion of the work had been performed. An application for extension of time having previously been filed, the board extended the time for construction under this application for six months, and provided that at the expiration of that time, if a showing was made that the project would be completed within two years of the date of the hearing, a further extension would be granted.

On the same day the board found and determined that the rights asked for under application No. 1,229 by the appellant "are approximately the same as have already been granted to the Nebraska Central Irrigation Co. (H. E. Babcock) under application No. 709 and the two are in conflict," and the application of appellant was dismissed. The record also shows that application No. 1,029 was filed with the board on September 30, 1910, by one Koenig asking for 3,200 cubic feet of water per second, taking water near the same point of diversion as applications No. 709 and No. 1,229; that, the title to application No. 1,029 being in litigation, the board took no action, leaving the matter to be disposed of after the supreme court had rendered its decision in the case.

The average flow of the Loup river for nine months in the year at and near the respective diversion points named in these applications is 2,700 cubic feet per second. The point of diversion of application No. 1,229 is a little above and the place of return of the water to the river is far below the diversion points of Nos. 709 and 1,029 so that its allowance and the completion of the work would take

all the water specified in Nos. 709 and 1,029. If the works are completed and the water applied to a beneficial use under application No. 709 within the time limited there will be no unappropriated water in the river susceptible of being granted either to Koenig or the appellant.

The appellant's contention is that there can be no appropriation until the works are completed and the water applied to a beneficial use, and that since, without taking into consideration permit No. 709, there was sufficient unappropriated water in the Loup river to satisfy the amount requested in its application No. 1,229, the board erred in refusing its application. Much of appellant's argument is devoted to establishing a proposition which needs no argument, namely, that, in cases arising under that portion of the irrigation act of 1895 which deals with water rights to be acquired thereafter, an appropriation is not perfect and complete until the works are completed and the water is applied to a beneficial use. Used in its strictest sense under such a statute the word "appropriation" denotes an appropriation which has been legally initiated by the filing of an application for a permit with the state board, the granting of a permit by that body, the construction of the works as specified therein, and the application of the water to a beneficial use within the time limited in the permit or subsequent extensions. The initial step is the application for the permit. Its issuance gives the applicant a contingent or conditional right which becomes a final and complete appropriation only when the works are completed and the waters beneficially used. It also confers upon him the prior right to the water against all subsequent applicants during the progress of the work if he finally fulfil the conditions of the permit. But, while this is the meaning of the word "appropriation" when used in the statute in its most exact and proper sense, it is often more loosely used to mean the contingent right to an appropriation and the right of priority derived under a permit from the state board. It is so used in the statute itself. In section 28, ch. 93a, art. II, Comp.

St. 1911, it is provided that applications to appropriate water shall upon being accepted "take priority as of date of original filing subject to compliance with the future provisions of the law and the regulations thereunder. If there is unappropriated water in the source of supply named in the application, and if such appropriation is not otherwise detrimental to the public welfare, the state board, through its secretary, shall approve the same by indorsement thereon, etc.   *   *   *   The priority of such appropriation shall date from the filing of the application in the office of the state board.   *   *   *   If there is no unappropriated water in the source of supply, or if a prior appropriation has been made to water the same land to be watered by the applicant, the state board, through its secretary, shall refuse such appropriation and the party making such application shall not prosecute such work so long as such refusal shall continue in force." In the next section (section 29), requiring the filing of a map or plat of the work within six months from the allowance of the application, it is provided: "A failure to comply with this section shall work a forfeiture of the appropriation and all rights thereunder." In section 62, providing that the work under a permit shall be begun within six months after the approval of the application, it is also specified: "A failure to comply with this section shall work a forfeiture of the appropriation and all rights thereunder." In these sections the word "appropriation" seems to be used more loosely to denote the prior right to an appropriation which has been obtained by virtue of an application being granted and a permit issued. This is not an unusual use of the term. " 'Appropriation,' as applied to water rights, is often loosely used by the authorities, and in general it is used with reference to a claim to the use of the water of a public stream from the time of the inception of the right, at all the intermediate stages, and down to the time when the last act is accomplished by which the right is finally and completely secured." 1 Words and Phrases, p. 473, and cases cited.

An applicant who obtains a permit under the statute acquires thereby a contingent "appropriation" to the extent of his grant which gives him the prior right to the use of this water against all subsequent claimants. It is in effect pledged to him for the period of time fixed by the board within 'which he may complete and perfect the appropriation, and is an "appropriation" to that extent, but no more.

The state board pleads that the allowance of appellant's application would be "detrimental to the public welfare," which is one of the grounds upon which it may, under the statute, refuse a permit. It no doubt considered the fact that in all probability the allowance of two or more conflicting permits to the use of all available water at or near the same point of diversion would result in defeating all projects. Capital is timid and would be very apt to be loth to enter into the development of the water-powers of the state if it were subject to the conflicts, litigation and interference with its work that would probably result if such a construction was given to the statute. The object of the law is to encourage and not to hinder the development of the state by the use of its waters for the purposes of agriculture or the generation of power, and the board was entitled to consider whether the allowance of conflicting claims to the same water at practically the same place would tend to accomplish or defeat the legislative purpose. *Young & Norton v. Hinderlider*, 15 N. M. 666, 110 Pac. 1045.

We think the board was justified in refusing to grant appellant's application, and the district court was right in affirming its order.

While it seems unjust that the state should retain the $2,150 paid by the applicant, under the provisions of section 8a, art. II, ch. 93a, Comp. St. 1911, it was the imperative duty of the secretary of the board to pay the money to the state treasurer at the end of the month. No rights can be predicated as against the board by reason of the secretary complying with this direction.

For these reasons, the judgment of the district court is

AFFIRMED.

BARNES, J., not sitting.