COMMONWEALTH POWER COMPANY, APPELLEE, v. STATE OF NEBRASKA, APPELLANT.

FILED APRIL 17, 1920.   No. 21312.

1. **States: ACTION: JUDGMENT.** Where a suit is brought by a claimant against the state pursuant to a resolution of the legislature, or one branch thereof, under the provisions of section 1177 *et seq.*, Rev. St. 1913, such action is a special proceeding, and the court should "hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require." Rev. St. 1913, sec. 1180.

2. ————: **WATERS: ACTION FOR MONEY HAD.** Money paid to the state under sections 2427, 2428, Rev. St. 1913, on an application for water appropriation, where application is dismissed through no fault of applicant, may under the facts shown be recovered from the state.

3. ——: LIMITATION OF ACTIONS. Where a claim against the state cannot be prosecuted without leave of the legislature, or one branch thereof, the statute of limitations will not begin to run against an action on such claim until such leave to sue the state has been given. *Lancaster County v. State*, 74 Neb. 211.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

Clarence A. Davis, Attorney General, Cecil F. Laverty and C. L. Dort, for appellant.

C. C. Flansburg, contra.

DAY, J.

Pursuant to a resolution passed by the house of representatives on March 17, 1919, authorizing this suit, the Commonwealth Power Company, hereinafter designated the plaintiff, brought this action against the state in the district court for Lancaster county, and recovered a judgment for the principal sum of $2,435. The state has appealed. The plaintiff has filed a cross-appeal claiming interest on the money during the time it has been in the hands of the state.

It appears that in May, 1912, and prior thereto, the secretary of the state board of irrigation, highways and drainage (who is the state engineer) made a personal survey of the Loup river and its tributaries, including Beaver creek, for the purpose of ascertaining the volume of water in said streams subject to appropriation. A report of this survey was duly filed with the board. The secretary, by reason of his surveys and records, was familiar with the volume of the waters in said streams, the appropriations heretofore made, and the amount of water therein subject to appropriation for water and power purposes.

On September 30, 1912, the plaintiff inquired of the said secretary whether there was unappropriated water for power purposes in the Loup river and Beaver creek, at points of diversion designated, and was informed that there were 3,800 second feet subject to appropriation.

Thereupon the plaintiff, relying upon the accuracy of the statements of the secretary as to the volume of unappropriated water in said streams, filed its two applications to divert certain waters therefrom for power development—one to divert 2,700 second feet from the Loup river, and the other to divert 500 second feet from Beaver creek. The plaintiff at the time of filing its applications, as required by law, paid the fees to the secretary in the sum of $2,435 under the provisions of sections 2427, 2428, Rev. St. 1913. On the same day the secretary of the board turned the money over to the state treasurer. No survey of the Loup river or Beaver creek was made by any one with special reference to the plaintiff's applications, but the secretary did receive and examine and record the plaintiff's applications. On November 25, 1912, the plaintiff's applications were dismissed, for the sole reason that there was no unappropriated water in said streams at the date of filing the plaintiff's applications; that the power sites applied for by the plaintiff had previously been appropriated by application No. 709, approved by the board January 30, 1906. The plaintiff thereupon sought by appeal to have its applications declared superior to claim No. 709, the case finally reaching the supreme court, wherein it was held that application No. 709 was superior to plaintiff's rights. *Commonwealth Power Co. v. State Board of Irrigation, Highways and Drainage,* 94 Neb. 613.

A resolution of the house of representatives, acting under the provisions of section 1177, Rev. St. 1913, authorized the plaintiff to bring this suit upon the cause of action set forth in the petition, and also directed the attorney general on behalf of the state to defend the suit. At the outset it is important to determine whether the case is to be governed by the ordinary rules of law or upon broader principles of equity and good conscience. A careful examination of the sections of the statute (Rev. St. 1913, sec. 1177 *et seq.*) convinces us that in actions of this character it was intended that the

ordinary rules of law which prevail in controversies be-
tween individuals should not apply, but that the case'
should be determined upon equitable principles based
upon justice and right. The sections of the statute con-
template a new remedy and a new right in this class of
cases. It is a special proceeding by virtue of special
statutory provisions, and the respective rights of the
parties are to be determined by the rules therein pre-
scribed. Were it intended that the ordinary rules of law
were to govern in cases of this kind, there would have
been no occasion for the enactment of several sections
of the statute following section 1177, and particularly
section 1180, which provides:

"The court in which such action may be brought shall
hear and determine the matter upon the testimony ac-
cording to justice and right, as upon the amicable settle-
ment of a controversy, and shall render award and judg-
ment against the claimant, or the state, as upon the
testimony, right and justice may require."

The purpose of these sections is to take such cases
out of the ordinary rules of law and to place their de-
termination upon a much higher and broader ground,
to make them triable to the court rather than a jury,
and to make justice and right, as viewed by the court,
the basis of its decision. With this rule as our guide,
how should this case be decided? The state has in its
treasury $2,435 paid by the plaintiff upon the belief, and
upon the assurance of the secretary of the board, that
there was water in the streams subject to appropriation.
This statement of the secretary was undoubtedly made
in the utmost good faith, but nevertheless it was errone-
ous and misleading, and the plaintiff in relying upon its
truthfulness has suffered a wrong. It was a mistake of
fact upon which both parties relied. No one believes the
secretary would have taken this money knowing there
was no water which plaintiff could take under its appli-
cations. The real thing of value which the plaintiff
sought was the right to divert the water. It is a well-

recognized principle that, where money has been paid under a mistake of fact, it may be recovered. Through no fault of the plaintiff, it has received nothing of substantial value for its money, and under all of the circumstances justice and right, as well as equity and good conscience, would seem to dictate that the money be refunded. In the matter of fair dealing and high business integrity, the state should take advance ground, if for no other reason than by way of example to its citizens. We hold accordingly that, where money is paid in advance to the secretary of the board under sections 2427, 2428, Rev. St. 1913, upon an application for water appropriation, and where the application is dismissed through no fault of the applicant, under the peculiar facts disclosed by the record, the applicant is entitled to recover the money so paid from the state; and especially is this true when the rule of justice and right applicable to such cases is invoked.

One of the contentions urged by the state is that the plaintiff's claim is barred by the statute of limitations. It is a sufficient answer to this argument to say that actions of this character cannot be prosecuted against the state without leave of the legislature, or one branch thereof, and that the statute of limitations does not begin to run against such a claim until leave to sue the state has been given. *Lancaster County v. State* (on rehearing), 74 Neb. 215. It is also urged that the case of *Commonwealth Power Co. v. State Board of Irrigation, Highways and Drainage,* 94 Neb. 613, is *res judicata* of the question presented here. We do not so understand that case. The issue in that case was whether the plaintiff was entitled to have its applications for water granted, claiming that application No. 709 was inferior to plaintiff's application. The court held against the plaintiff. There was no attempt in that suit to recover the money paid. Such a contention would have been entirely inconsistent with its claim for appropriation of the water. The subject-matter in that case and the

present one is entirely dissimilar. The defense of *res judicata* is only available as to matters actually in issue and determined in a former suit. A number of other points are argued by the state, but we will not prolong this opinion by considering each separately. Suffice it to say, that we have examined them, and in our judgment they do not meet the controlling feature of this case that under the peculiar facts justice and right require that the money paid by the plaintiff be refunded.

By the plaintiff's cross-appeal it claims interest upon the amount of money during the time such money was in the hands of the state. During a portion of this time, however, the money was voluntarily left with the state authorities while the plaintiff was seeking by appeal to have priority rights over claim No. 709, and during that period it was not claiming a return of its money. So far as the record discloses, the first date the plaintiff was claiming a right to have the money refunded was the date of the resolution of the house of representatives granting plaintiff permission to sue the state—March 17, 1919. Apparently that was the view taken by the trial court as its judgment indicates interest allowed.

The judgment of the district court is

AFFIRMED.

LETTON and ROSE, JJ., not sitting.