OTTO BENDA ET AL., APPELLANTS, V. STATE OF NEBRASKA, APPELLEE.

FILED OCTOBER 20, 1922. No. 22689.

States: LIABILITY. Where individual members of a party, engaged in surveying a public road under the direction of an engineer employed by the state, enter a private pasture without permission of the owner thereof or of the engineer, for the private purpose of getting water to drink, and negligently shut off the only supply of water for cattle in the pasture, thus causing them to die of thirst, the state, as defendant in a judicial proceeding authorized by the house of representatives, is not liable as a matter of right and justice for the loss.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

King, Bittner & Campbell and C. C. Flansburg, for appellants.

Clarence A. Davis, Attorney General, and Charles S. Reed, contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, ALDRICH and DAY, JJ.

ROSE, J.

The claim of plaintiffs consists of six items aggregating $23,100 for the loss of registered Holstein and Hereford cattle which perished for want of water in a pasture in Polk county between July 22, 1919, and July 27, 1919. The supply of water for cattle in the pasture was negligently shut off by Fred H. Richards and Jesse M. Moore, members of a surveying party employed by the state of Nebraska under the direction of Vance W. Marquis, an engineer engaged in making a survey for a public highway. The claim was presented to the legislature for allowance. No appropriation to pay it was made, but the house of representatives by resolution adopted March 2, 1921, permitted plaintiffs to commence a proceeding in the district court for Lancaster county "for the purpose of ascertaining, determining and obtaining an adjudication of their respective claims and the liability of the state of Nebraska for the payment thereof." Plaintiffs acted under the resolution and filed a petition. The facts pleaded therein were conceded by the state for the purposes of the hearing and the district court disallowed the claim. Plaintiffs have appealed.

Plaintiffs concede there is no legal liability on the part of the state to pay for their loss, but they invoke the statutory doctrine of "justice and right" to procure the allowance of their claim. They state their position in the following language:

"A suit against the state by permission of the legislature is not a suit at law, but a special proceeding; and the court is required to hear and determine the matter accord-

ing to justice and right, as upon the amicable settlement of a controversy, and is required to render an award and judgment against the claimant, or the state, as right and justice may require." Rev. St. 1913, sec. 1180; *Commonwealth Power Co. v. State*, 104 Neb. 439.

The statute to which reference is thus made provides:

"The court in which such action may be brought shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require." Rev. St. 1913, sec. 1180.

For the purpose of determining the merits of the claim a more detailed statement of the facts is necessary.

The cattle perished in a pasture controlled by plaintiffs. It was nearly half a mile from a dwelling and over two miles from the home of any plaintiff. The only source of water supply for live stock in the pasture was a plant consisting of a drilled well, a windmill-pump, a cistern and a connected drinking tank automatically filled by gravity. The tank stood in the open pasture where the cattle could drink from it. The rest of the water-plant was surrounded by a fence which kept the cattle out. The conduit between the cistern and the tank was an iron pipe with a valve to shut off the flow of water from the cistern. By means of floats the windmill was automatically started or stopped as the tank in the pasture was emptied or filled. The capacity of the cistern was sufficient to supply the cattle with water for two weeks. After the water-plant had been in successful operation for five years plaintiffs examined it July 20, 1919, and found it in working order. There was then an ample supply of water in the cistern. When they returned a week later the cistern was full, but the tank was empty and animals valued at $23,100 had died or were dying of thirst. In the meantime plaintiffs had been at work early and late elsewhere caring for wheat which they had planted the fall before in response to a

patriotic appeal by the federal government, and did not see their cattle for a week.

Along one side of the pasture the surveying party had been engaged in surveying a public road, which, at the nearest point, was 40 rods from the water-plant described. Without any right, permission or authority, the two named members of the surveying party entered the pasture, went into the inclosure around the well, uncovered the cistern, took water from the inlet, and in some way closed the valve between the cistern and the tank, thus causing the loss for which plaintiffs seek a recovery from the state.

According to the standards of "justice and right" which plaintiffs have adopted as the test of recovery from the state, did the trial court err in disallowing the claim? According to the record Moore and Richards, in going into the pasture, in entering the inclosure at the water-plant, in opening the cistern, in taking water, and in closing the conduit between the cistern and the tank, were mere individual trespassers. Their demand for water was personal. Their effort to quench their thirst had no part in any operation of the government and had no legitimate connection with any public business in which the state was engaged. In committing the trespass and in causing the loss they were not directed by any public officer in the performance of an official duty. The work of surveying a public road was performed in the interests of the public as a whole, but the trespass and the negligence had no legal or just connection with such work. The business of the state did not take the government into the pasture, or to the cistern, or create a legal liability for the torts of individuals serving personal ends.

Taxpayers who provide the expenses of government may know about lawful public improvements, but neither they nor the state officers who represent them in public affairs know generally about, or contemplate, torts of private individuals and resulting losses.

If the wrongful acts pleaded by plaintiffs, however, could

have been contemplated by the state or its officers with a view to preventing the loss or to incurring liability therefor, the incentive to greater foresight to save the cattle is attributable to plaintiffs. They controlled the pasture, the stock and the water-plant. They knew the nature of the automatic devices used to supply water, the value of the stock in the pasture and the attending dangers. They were prompted by natural impulses to preserve their own rights and their own property. Knowing the conditions, they remained away from the pasture for a week. A visit which they could have made in the meantime might have prevented the loss. Officers of the state, performing duties directed by law only, did not have the same information or the same incentives as plaintiffs to protect the latter's property or to contemplate damages by trespassers. The state committed no wrong. No officer or employee, while acting for the state, did anything to injure plaintiffs.

The petition does not show that the individual trespassers who, on a personal mission, committed the wrongful acts which destroyed plaintiff's property are not financially able to pay, and legally liable for, the loss sustained. The state has never been held liable for individual torts under such circumstances. Justice and right do not require innocent taxpayers or the public at large to bear such burdens, created solely, as they were, by private persons, but the state has made provision for the punishment of trespassers and for the redress of private wrongs.

The statutory provision that the court shall "hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy," did not strip the court of its power to determine the issue according to the principles of law and the rules of equity by which courts have always been guided in determining judicial questions. The legislature, by the use of that expression, never meant to make the state liable for a claim according to some indefinable, ethereal standard unknown to either law or equity. "Justice and right" are the aims of both. The standards for determining right and

justice in judicial proceedings are principles of law and rules of equity. This test is the result of the investigation, the thought and the wisdom of the ages, and must be respected if the government is to retain power to maintain itself.

With employees visiting all parts of the state on various missions of government, and with the state answering for the losses caused by individual wrongs and trespasses committed on private missions, no one could contemplate the extent of public losses or make timely provision for their payment.

As between individuals the trespasser is answerable for his wrongs. As between the state and an individual, why should the state be held liable for damages resulting from private wrongs? It would be a travesty to sanction such a liability in the name of "justice and right."

The state in its own courts should at least stand on an equality with private individuals.

The Sovereign's immunity from suit has long been a recognized principle of government. From such immunity to a one-sided "special proceeding," where the state, though committing no wrong nor violating any obligation nor neglecting any duty, is denied the protection of both law and equity and held liable for damages caused by the wrongful acts of individual trespassers, would be a radical and alarming step.

The use of the legislative expression, "amicable settlement of a controversy," in the connection used in the statute, presupposes the settlement of a controversy growing out of a claim having at least some support in the legal or the equitable principles by which "justice and right" are determined.

The claim allowed in *Commonwealth Power Co. v. State,* 104 Neb. 439, was founded on plain principles of equity leading to justice and right. The decision therein, when properly considered, is not authority for the contentions of plaintiffs in the present case.

The conclusion reached herein requires an affirmance of the judgment of the trial court.

AFFIRMED.

MORRISSEY, C. J. and DAY, J., dissent.