LANCASTER COUNTY ET AL. V. STATE OF NEBRASKA.*

FILED JUNE 22, 1905. No. 13,868.

1. **Claims Against State: FILING.** A creditor of the state, where the law makes no provision for the payment of his claim. is not required to file such claim within two years after its accrual with the auditor of public accounts for adjustment and allowance, and his failure to so file it will not bar an action thereon against the state. *State v. Moore*, 40 Neb. 854, followed.

2. **Action.** A resolution of the state senate, passed in accordance with the provisions of section 1106 of the code, will authorize the claimant to commence and maintain an action against the state on such a claim.

3. **Petition** examined, and *held* sufficient to resist a general demurrer.

ERROR to the district court for Lancaster county: ED-WARD P. HOLMES, JUDGE. *Reversed.*

*James L. Caldwell, Frank M. Tyrrell* and *Charles E. Matson,* for plaintiffs in error.

*F. N. Prout, Attorney General,* and *Norris Brown, contra.*

* Rehearing allowed. See opinion, p. 215, *post.*

BARNES, J.

On the 26th day of June, 1903, the plantiffs commenced this action against the state in the district court for Lancaster county, and thereafter filed their amended petition, from which we gather the following facts: On or about the 26th day of January, 1893, the treasurer of Lancaster county collected, and deposited in the Capital National Bank of Lincoln, Nebraska, an authorized county depository, the sum of $35,694.54 of public moneys. On that date the bank failed, and of the money thus deposited there was lost, absolutely, the sum of $32,919.32; $5,000.40 of this money was state funds. On the 31st day of January, 1894, the county treasurer of said county paid to the state treasurer the full amount of the state's funds so lost by the bank failure, thus reimbursing the defendant; and it was alleged that such payment was made without the consent of the county, without any authority from its board of commissioners, and by inadvertence and mistake. It was also alleged in the petition that the sum so paid to the state constituted a just obligation owing from the defendant to Lancaster county at the time of the bringing of this action. It was further alleged that on the 4th day of April, 1903, the state senate. passed a resolution authorizing the bringing of this action for the accounts and items sued on. The petition concluded with a prayer for an accounting, and a judgment against the defendant and in favor of the plaintiffs for such sum as might be found due, together with interest at 7 per cent. thereon from the 31st day of January, 1903. The state demurred to the amended petition, and the demurrer was sustained for two reasons: First, that it was shown on the face of the petition that the cause of action was barred by the statute of limitations; second, that the petition did not state facts sufficient to constitute a cause of action. The plaintiffs elected to stand on their amended petition, the action was dismissed, and is brought here by petition in error.

The plaintiffs contend that the trial court erred in hold-
ing that their claim was barred by the limitation contained
in section 6, article III, chapter 83, Compiled Statutes
1903 (Ann. St. 9094). It would seem that this contention
is not well founded. In *State v. Moore*, 40 Neb. 854, 25
L. R. A. 744, the court referred to that section, quoted sec-
tion 9, article IX of the constitution, and said:

"Now, what is meant in this constitutional provision by
'claims upon the treasury' which the auditor must examine
and adjust? We take it that it means claims which the
state is or may be under legal obligation to pay, such as
the salaries of its officers and employees, the cost of erect-
ing buildings, and the expense attendant upon the main-
tenance of its prisons, asylums, schools, and other insti-
tutions."

This is in harmony with many other decisions of our
court in which it is held that statutes providing for the
presenting of claims to county or city authorities apply
only to claims arising from contract or some direct legal
obligation, and not claims arising from tort. It is only
in those claims that are properly presented to the auditor,
and that he is authorized to allow, that appeals provided
for by the constitution and by statute can be taken. The
claim involved in the case at bar could not be brought into
court in that way. The law makes no provision for the
payment of such a claim, and it is not included in the pro-
visions of the statute or the constitution above mentioned.
It must be brought into court by consent of the legisla-
ture. If it is not necessary under the statute that such
claims as this should be presented to the auditor at all,
then, of course, the two years' limitation contained in sec-
tion 6, *supra*, does not apply. The statute of limitations
as a defense is a personal one, and may be waived, even
if the claim has been barred by statute. The state might
waive that defense and authorize this suit, and we think
by its action in this case it has done so. When this claim
was presented to the legislature and leave to sue was asked
for, more than two years had already run, which would

have furnished a sufficient excuse to the legislature to refuse leave to sue. It, nevertheless, by the action of the senate, granted such leave, and this was a waiver of the bar of the statute, if such bar existed. Section 22, article VI, of the constitution, provides: "The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suit shall be brought." And the legislature, exercising the authority thus conferred, has provided by section 1106 of the code: "The several district courts of the judicial districts of the state as now provided for and established by the constitution of the state, and of such judicial districts as may hereafter be provided by law, shall have jurisdiction to hear and determine the following matters: *First.* All claims against the state filed therein, which have previously been presented to the auditor of public accounts, and have been in whole or in part rejected or disallowed. *Second.* All claims or petitions for relief that may be presented to the legislature, and which may be by any law, or by any rule or resolution of the legislature, or either house thereof, referred to either of said courts for adjudication." Therefore the resolution of the senate, set forth in the amended petition, constitutes ample authority for the prosecution of this action.

It is claimed on the part of the state that there is a misjoinder of parties plaintiff, but this question is one which cannot be raised by demurrer, so that point requires no further consideration.

Considering now the merits of the case as presented by the amended petition, it appears that the county treasurer of Lancaster county paid to the state certain money belonging to the county, without any authority therefor, and such payment was made by inadvertence and mistake. If these allegations are true, they state a cause of action, and are sufficient to resist a general demurrer. This fact seems to be conceded by the state, for the only defense presented by the brief and argument of the attorney general is the limitation contained in the statute above men-

tioned. We are therefore of the opinion that the trial court erred in sustaining the demurrer and dismissing the plaintiff's cause of action.

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded for further pro-ceedings.

REVERSED.

HOLCOMB, C. J., concurs in the order of reversal.

The following opinion on rehearing was filed April 5, 1906. *Judgment of reversal adhered to:*

1. **Claims Against State: LIMITATION OF ACTIONS.** If one having a claim against the state cannot prosecute the same without leave of the legislature or one branch thereof, the statute of limitations will not begin to run against an action on such claim until such leave to sue the state has been given.

2. **State taxes** in the hands of a county treasurer are the property of the state, and, if lost without fault of the county, the county is not liable to the state therefor.

3. **State Funds: DEPOSITORY: ESTOPPEL.** If money belonging to the state in the hands of a county treasurer is by him deposited in a bank that has been designated as a depository of county funds, and is lost by a failure of the bank, it is not the duty of the treasurer to use the money of the county to make good the loss to the state, and his action in doing so without authority from the county board will not estop the county to recover the money from the state.

SEDGWICK, C. J.

In the original brief of the state which was considered upon the former hearing, it was contended that the action was barred by the limitations contained in section 6, article III, chapter 83, Compiled Statutes, 1903 (Ann. St. 9094), which provides that persons having claims against the state shall exhibit the same to the auditor within two years after such claims shall accrue. It was not contended that the general statute of limitations applies. In answer to this argument on behalf of the state, it was said in the

opinion that, by the resolution of the senate authorizing a suit directly against the state upon this claim, the objection that the limitation of section 6 applies was waived by the state. It was not intended to pass upon the question whether the general statute of limitations would, necessarily, be waived by the authority given to sue the state under the resolution of the senate, without language in the resolution which expressly or impliedly waived that defense.

1. It is now contended that the general statute of limitations applies, and that the resolution of the senate is not a waiver of this defense. Upon this contention several authorities are cited. Among them is *Hepburn's Case,* 3 Bland (Md.), 95, 109. Hepburn was a creditor of William and Robert Mollison. The property of the Mollisons had been confiscated and sold by the state, and Hepburn's contention was that, by this confiscation and sale, he was prevented from realizing upon his claim against the Mollisons. The statute of limitations had run upon his claim against the Mollisons, and the chancellor held "that there is sufficient evidence to show that this debt  *  *  *  has been long since paid and satisfied by the Mollisons themselves." And the chancellor further said (p. 125) : "The great lapse of time since it became due, without the delay being in any manner reasonably accounted for, gives rise to a presumption, altogether irresistible, that it must have been, in some way or other, fully and completely paid and satisfied." There is no suggestion in the opinion of the chancellor that there would be any presumption that the state had paid this claim to Hepburn. In the case at bar the delay in bringing the action is reasonably accounted for. It could not be brought without leave of the state, and it was brought within three months after such leave was obtained. Another case cited and relied upon is *Baxter v. State,* 10 Wis. *454. In that case the action was authorized by a general statute, which had been in force, and under which the plaintiff might have sued at any time after the claim accrued. This right of action had

existed for sufficient length of time to bar the claim under the general statute of limitations, and the sole question was whether, in any case, under any circumstances, the state could avail itself of the defense of the statute of limitations. After discussing and disposing of this question the court said: "The statute, of course, did not run until the state rendered itself liable to a suit on any claim. But as that statute had been in force more than six years before the commencement of this suit, we think the claim is barred." The statute of limitations does not generally run upon a claim while no right of action exists thereon, and, under that rule, the statute has no application to this case.

2. It is next contended in the brief of the state that payment of money justly due cannot be recovered back on account of mistake. This leads to a consideration of the question whether this money was justly due the state from the county. It was not within the province of the treasurer to determine this question. The fact that the treasurer had paid over 'the money to the state without any authority from the county board ought not to prejudice the legal rights of the county; so that the question is whether the loss of this money should fall upon the state or upon the county. It must be remembered that this question is being determined upon the allegations of the petition alone. The case is now presented to this court upon a general demurrer, which raises only the question of the sufficiency of the petition. Under these allegations we think that the money lost was the loss of the state, and that the county was not liable therefor to the state. In *County of Valley v. Robinson*, 32 Neb. 254, it was said: "The county is charged with the levy and collection of all county and state taxes, and until state taxes are paid they remain a subsisting charge against the county." The action was brought by the county against the treasurer and his bondsmen to recover taxes collected by him for the state. The question was whether the county had sufficient interest in the collection of these

taxes to maintain the action. The question presented in this case was not before the court, and the language there used was not used with reference to the question being here considered. In what sense the county is charged with the state's taxes until they are paid into the state's treasury is not made clear in that decision. The county was the obligee named in the bond upon which the action was brought, and the holding that the action might be brought in the name of the county to recover the state's taxes that have been misappropriated by the treasurer does not go so far as to hold that the county itself is an insurer of the state's funds in the hands of the treasurer, and, if unable to recover them from the treasurer, could be held liable to the state therefor. Judge MAXWELL in the opinion said: "The question here involved was before this court in *Albertson v. State,* 9 Neb. 429, and *Thorne v. Adams County,* 22 Neb. 825." In both of these cases it was held that an action could be maintained by the county against the treasurer for all such funds in respect to which he is the defaulter. In the former case the second paragraph of the syllabus is: "Section 32 of the code of civil procedure authorizes an action upon an official bond in favor of the *public,* where there are no special provisions to the contrary, in the name of the obligee of the bond." *School District v. Saline County,* 9 Neb. 403, was an action by the school district to recover from the county money in the hands of the county treasurer belonging to the district. In the opinion it is said that it is the duty of the county treasurer, when funds belonging to the school district come into his hands, "to credit them to the proper district, and on proper application pay them over to the officer of the district entitled to receive them from his hands. With the management of this business the county commissioners have no voice whatever. They cannot control, nor is the county in anywise answerable for, the acts of the treasurer, either committed or omitted, in respect of these duties. If the county treasurer has misappropriated moneys belonging to the

Lancaster County v. State.

plaintiff, he and his sureties may be liable in a proper action on his bond; but the county very clearly is not liable therefor." This language appears to apply as well to the duties of the county treasurer in respect to the state funds; and upon the same reasoning the county would not be liable to the state for its funds in the hands of the county treasurer. While under the decisions above referred to an action may be brought in the name of the county against the treasurer to recover funds of the state misapropriated by him, the state auditor is expressly authorized by statute to bring such suit. Laws 1879, p. 343 (Comp. St. 1903, ch. 77, art. I, secs. 184, 187; Ann. St. 10583, 10586). Section 186 provides: "The bond of every county treasurer shall be held to be security for the payment by such treasurer to the state treasurer and the several cities, towns, villages and the proper authorities and persons respectively, of all taxes and special assessments which may be collected or received by him on their behalf, by virtue of any law in force at the time of giving such bond, or that may be passed or take effect thereafter." Under these provisions of the statute it is manifest that the liability of the county for state funds in the hands of the county treasurer is no greater than its liability for other funds not belonging to the county, and *School District v. Saline County, supra,* is decisive of the question here involved.

For these reasons, our former judgment upon this demurrer is adhered to.

JUDGMENT ACCORDINGLY.