REUBEN BORDY, APPELLEE, V. STATE OF NEBRASKA ET AL., APPELLANTS.

7 N. W. (2d) 632

FILED JANUARY 15, 1943.   No. 31502.

*Walter R. Johnson, Attorney General, Herbert T. White* and *Alfred D. Raun,* for appellants.

*Alfred A. Fiedler* and *Robert G. Fuhrman, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is a suit in equity in which plaintiff, individually and as trustee for thirty other persons similarly situated, petitions the court to set aside the waivers of damage and deeds to the land used by the state in the construction of a highway, on the ground that they were procured by the fraud of the state and its agents. By stipulation of the parties only two causes of action were tried. The trial court found for the plaintiff and the state appeals.

The record shows that in 1931 and 1932 certain residents of Thurston and Burt counties, being desirous of having a state highway constructed from Decatur to Winnebago, orally petitioned the state highway department to build such a road. The department through its officers offered to build the road if waivers of damage and deeds to the right of way were procured without cost to the state. The waivers and deeds were procured by interested citizens of the two counties without cost, and the road constructed. Plaintiff contends the persons obtaining the waivers and deeds orally represented that the building of the highway would help local conditions, that all persons owning land along the proposed highway were donating the necessary land and waiving all claims for damages, that no person would be paid for right of way across his lands, that the highway was not

built where it was represented that it would be built, that local Indian labor was to be used and that local persons with teams were to be employed in constructing the road. There is evidence in the record that the highway was not built in accordance with all of the alleged representations herein detailed. On February 23, 1939, the plaintiff procured for himself, and other landowners for whom he acts as trustee, a resolution of the legislature waiving the sovereignty of the state and authorizing the commencement of suit in Thurston, Burt or Douglas counties, to determine the rights of the parties. The resolution further recites: "And the legislature intends by this resolution to make the state of Nebraska liable to respond in damages to the persons named herein for the damage to their respective properties if it appears that such property was taken without just compensation or damages since it is alleged that said property was obtained by the department of roads and irrigation of the state of Nebraska and its agents and representatives upon the false and fraudulent misrepresentations and warranties as set forth in the preamble hereof." The attorney general was directed by said resolution to defend any suit brought by virtue of the resolution and to make each and every defense thereto except laches and the statute of limitations.

This suit was commenced on December 22, 1939, more than two years after the waivers and deeds were executed and the highway constructed. The district court for Thurston county, after a trial on the merits, found for plaintiff on the two causes of action tried and the state brings the case to this court for review.

The attorney general contends that the resolution of the legislature violates constitutional legislative restraints in that it attempts to create liability on the part of the state to a part of a class without creating such liability for the whole class, contrary to section 18, art. III of the Constitution.

The right of the legislature to waive the immunity of the state from suit is unquestioned. But an attempt on the

part of the legislature to waive the immunity of the state from liability raises an altogether different proposition, unless, of course, that it be in the form of a statute operating uniformly on the whole class. This principle was clearly announced in *Cox v. State,* 134 Neb. 751, 279 N. W. 482. If the resolution with which we are concerned attempts to create liability on the part of the state, in addition to the granting of a waiver of the immunity of the state to suit, such attempt to create liability offends against section 18, art. III of the Constitution.

The state is not liable for the torts, misfeasance, or the unauthorized exercise of power by its officers or agents, unless such liability exists by constitutional provision or statute. *Gibbons v. United States,* 8 Wall. 269, 19 L. Ed. 453; *Bush v. State Highway Commission,* 329 Mo. 843, 46 S. W. (2d) 854; *Davis v. State,* 30 Idaho, 137, 163 Pac. 373; *James Stewart & Co. v. State,* 121 Misc. 827, 201 N. Y. Supp. 334. We find no such provision or statute imposing liability upon the state for fraud perpetrated by its officers or agents. And, as we have before said, such liability cannot be created by a resolution of the legislature, although it may be created by statute uniform as to class. We think the resolution was ineffective to create a liability for fraud which did not previously exist.

It is urged, however, that this suit is based on section 21, art. I of the Constitution, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." We call attention to the fact that this is a self-executing provision of the Constitution, which requires no resolution waiving the immunity of the state from suit to authorize the commencement of action. If the plaintiff had a cause of action under this constitutional provision, it became unenforceable two years after its accrual. Comp. St. 1929, sec. 20-218. It is not disputed that the two-year period elapsed before the suit was commenced and, in our opinion, any liability on the part of the state which may have theretofore existed terminated by operation of the statute of limitations.

It is contended that the direction of the legislature that the defenses of laches or the statute of limitations should not be pleaded is effective to save plaintiff's cause of action from the operation of the statute. We think not. Constitutional restraints upon the exercise of the legislative power are such that special privileges to the few cannot be granted. If the legislature desired by a general statute, uniform in its application to all within the class, to provide a different limitation period on cases arising under this provision, a different matter would be presented. But the legislature is prohibited from waiving the limitation period to a few within the class and leaving it to operate on all others in the same situation.

Plaintiff cites two cases in support of his position: *Lancaster County v. State*, 74 Neb. 211, 104 N. W. 187, and *Commonwealth Power Co. v. State*, 104 Neb. 439, 177 N. W. 745.

In the first opinion in the *Lancaster County* case the court said: "The statute of limitations as a defense is a personal one, and may be waived, even if the claim has been barred by statute." But on rehearing, in its opinion appearing at 74 Neb. 215, 107 N. W. 388, the court departed from this conclusion and, as evidenced by the first paragraph of the syllabus, held: "If one having a claim against the state cannot prosecute the same without leave of the legislature or one branch thereof, the statute of limitations will not begin to run against an action on such claim until such leave to sue the state has been given." We agree with the soundness of this holding. In the opinion on rehearing, however, the court made the following statement with reference to its former opinion in the same case: "It was not intended to pass upon the question whether the general statute of limitations would, necessarily, be waived by the authority given to sue the state under the resolution of the senate, without language in the resolution which expressly or impliedly waived that defense." The statement shows on its face that it was not necessary to a decision of the case. In so far as the implication contained therein to the

effect that the defense of the statute of limitations could be waived by express provision in a resolution of the legislature authorizing suit is concerned, we do not think that it correctly states the law and that part of the opinion is disapproved.

The *Commonwealth Power Company* case reaffirms the *Lancaster County* case in holding that, where a claim against the state cannot be prosecuted without leave of the legislature, or one branch thereof, the statute of limitations will not begin to run against an action on such claim until such leave to sue the state has been given. We find nothing in this case supporting the claim that the legislature may waive the general statute of limitations as to a group within a class without waiving as to all within such class.

We necessarily conclude that, if the suit at bar is based on section 21 of article I of the Constitution, it is barred by the statute of limitations. Comp. St. 1929, sec. 20-218. And the attempt of the legislature to waive the statute as to a few within the class is violative of the uniformity provisions of the Constitution. *Cox v. State*, 134 Neb. 751, 279 N. W. 482. If the suit is based upon the fraud of the officers and agents of the state, the petition does not state a cause of action, for the reason that liability on the part of the state does not exist under the constitutional and statutory law of this state, the only source of legal liability; and for the further reason that, while the legislature has the power to waive the state's immunity from suit, it is prohibited by constitutional provision from waiving the state's immunity from liability, unless such liability be established by general law uniform in its application to all within the class.

It appears from the record that some of the lands used by the state in building the highway belonged to members of the Omaha and Winnebago Indian tribes. One of the causes of action before this court on appeal involves the rights of Grace G. Hollowell, an Omaha Indian. It is contended that Grace G. Hollowell as such lacked the capacity to deed any part of her lands to the state. The treaty with

the Omaha Tribe of Indians under date of March 16, 1854, provides: "The Omahas agree that all necessary roads, highways, and railroads, which may be constructed as the country improves, and the lines of which may run through such tract as may be reserved for their permanent home, shall have a right of way through the reservation, a just compensation being paid therefor in money." 10 U. S. St. at Large, p. 1043, art. 14. Applicable federal statutes authorized the secretary of the interior to issue patents to the Indians for their allotted lands and to hold the lands for twenty-five years in trust for the Indian to whom the allotment was made. Extensions of the twenty-five year period were authorized and made. The statute then stated: "And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void." 25 U. S. C. A. sec. 348. On March 4, 1915, the following statute, quoted in part, was enacted: "That the legal road authorities, charged with the duty of laying out and opening public roads and highways under the laws of the state of Nebraska, having jurisdiction over any territory embraced within the Winnebago Indian Reservation, the Omaha Indian Reservation * * * are hereby authorized and empowered to lay out and open public roads within any of the said Indian reservations * * * Provided, That such road authorities shall, in addition to notifying the landowners * * * likewise serve notice upon the superintendent in charge of the restricted Indian lands * * * and shall also furnish him with a map drawn on tracing linen showing the definite location and width of such proposed road, and no such road shall be laid out until after it has received the approval of such superintendent." 38 U. S. St. at Large, p. 1188, ch. 161.

The record shows that notice was given to the superintendent of the Omaha Indian Reservation. Communications between the state highway department and the Department of the Interior, Office of Indian Affairs, appear

in the record which indicate that full notice was had. On October 31, 1932, the highway plans were submitted to and approved by the superintendent of the Omaha Indian Reservation. It appears to us that full compliance was had with the statute necessary to the securing of valid conveyances from the Indian grantors. We think that the federal act (38 U. S. St. at Large, p. 1188, ch. 161) is an act independent and complete in itself and a total authorization for the state of Nebraska to build a state highway across the Omaha and Winnebago Reservations if compliance is had with the terms of that statute. The record indicates that such compliance was had.

For the reasons stated, the plaintiff has no cause of action against the state on either of the two causes before the court. In view of the conclusion reached, other assignments of error will not be discussed or determined.

REVERSED AND DISMISSED.