*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1293**

In the Matter of the Welfare of the Children of:
L. S., E. B. and H. J., Parents

**Filed February 1, 2016
Affirmed
Worke, Judge**

Kandiyohi County District Court
File No. 34-JV-15-117

John E. Mack, New London, Minnesota (for appellant)

Shane D. Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent county)

John W. Mueller, Litchfield, Minnesota (for respondent E.B.)

Dawn Weber, New London, Minnesota (for respondent H.J.)

Penny Johnson, Willmar, Minnesota (guardian ad litem)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant-mother challenges the termination of her parental rights, arguing that termination is not in her children's best interests. We affirm.

**FACTS**

In 2007, appellant-mother L.S. gave birth to I.B.  In July 2008, I.B. resided with a foster family for four days while L.S. was in jail.  From August 18 through December 5, 2008, L.S. and I.B. resided at a chemical-dependency treatment facility and a halfway house.  L.S. and I.B. next resided with B.S., L.S.'s ex-husband, until April 2011.  L.S. stated that she and I.B. left for a women's shelter because B.S. assaulted her.

After leaving the women's shelter, L.S. and I.B. lived on their own for a few months before moving in with E.B., I.B.'s father.  On January 4, 2012, law enforcement searched the residence and arrested L.S. and E.B. for possessing methamphetamine.  L.S. and I.B. tested positive for methamphetamine.  From January 2012 through January 2013, L.S. spent time in jail, chemical-dependency treatment, a shared apartment, and a motel before moving into an apartment in Willmar.  I.B. was in foster care from January through February 2012 and from May 2012 until June 2013.

In July 2013, L.S. gave birth to H.B.  One week later, L.S. consumed bath salts and tested positive for amphetamine.  In April 2014, L.S., I.B., and H.B. moved into a house.  Shortly after, A.C., L.S's boyfriend at the time, moved in.  In August 2014, A.C. became intoxicated, threatened L.S. with a knife, and attempted to burn down the house while I.B. and H.B. slept upstairs.  A.C. was charged with assault but convicted of disorderly conduct after L.S. asked the district court to send him to treatment.

A.C. returned from jail and continued to reside with L.S.  In February 2015, A.C. held L.S. hostage in her basement for three days.  A.C. threw L.S. through a glass table

2

and a mirror, choked her, and pulled out her hair. A.C. brought I.B. and H.B. into the basement to visit L.S., and L.S. escaped by playing dead and crawling through a window.

On April 30, 2015, L.S., I.B., and H.B. were staying at W.N.'s home in Benson. Law enforcement located I.B. and another child walking to a store. The children were returned to W.N.'s home when law enforcement made contact with L.S., who appeared to be under the influence of "narcotics." Law enforcement located drug paraphernalia in W.N.'s home that tested positive for methamphetamine. The paraphernalia was located in areas easily accessible to the children. L.S. was arrested and later admitted to using methamphetamine for multiple weeks. L.S. and H.B. tested positive for methamphetamine.

The county petitioned to terminate L.S.'s parental rights. After a court trial, the district court terminated L.S.'s parental rights to I.B. and H.B. The district court granted custody of I.B. to her father, E.B. The district court granted custody of H.B. to her father, H.J. E.B. subsequently terminated his parental rights to I.B. L.S. appeals the termination of her parental rights.

**D E C I S I O N**

*Statutory criteria*

When reviewing a district court's decision to terminate parental rights, "we will review the district court's findings of the . . . basic facts for clear error, but we review its determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Children of J.R.B.*,

3

805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). Clear and convincing evidence is required to support a termination decision. *Id.* at 899.

A district court may terminate parental rights if the

> parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). Mental illness alone is not a statutory ground to terminate parental rights. *In re Welfare of S.Z.*, 547 N.W.2d 886, 893 (Minn. 1996). Additionally, "substance . . . use alone does not render a parent palpably unfit; rather, the county must demonstrate that the parent's substance . . . use is of a nature and duration that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the child's ongoing needs." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 663 (Minn. 2008).

Here, the district court determined that L.S. is palpably unfit to parent due to continued methamphetamine use, her psychological disorders, and the likelihood that each would continue for the foreseeable future. The record supports the district court's finding. In 2008, L.S. entered chemical-dependency treatment. On January 4, 2012, law enforcement arrested L.S. after finding methamphetamine in her home. In July 2013, L.S. consumed bath salts, resulting in her testing positive for amphetamine. In April 2015, L.S. was arrested and tested positive for methamphetamine. L.S. admitted to using

4

methamphetamine for three to four weeks prior to her arrest. L.S. was also diagnosed with major depressive disorder, polysubstance abuse, and borderline personality disorder. L.S. refuses to take Lithium as prescribed and previously self-medicated with Valium, Adderall, and methamphetamine.

Therefore, the district court did not abuse its discretion by determining that L.S. is palpably unfit to parent I.B. and H.B. *See In re Welfare of D.L.R.D*, 656 N.W.2d 247, 251–52 (Minn. App. 2003) (affirming termination of parental rights based on parent's "continuing problems with improving her parenting skills, her mental health and drug abuse, and her other substantial personal issues"); *see also S.Z.*, 547 N.W.2d at 894 (affirming termination of parental rights based on parent's history of mental illness and intention to refrain from taking medication).

### Best-interests analysis

L.S. argues that the best interests of her children are not served by terminating her parental rights while retaining the parental rights of their fathers.[1] "We review a district court's ultimate determination that termination is in a child's best interest[s] for an abuse of discretion." *J.R.B.*, 805 N.W.2d at 905. A district court's decision receives considerable deference because "[it] is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996). We will not

---

[1] After the district court filed its order, E.B. voluntarily terminated his parental rights to I.B. L.S. asserts that E.B.'s voluntary termination is outside the record for this appeal. But, even if L.S. is correct, this court can take judicial notice of that fact. *See Smisek v. Comm'r of Pub. Safety*, 400 N.W.2d 766, 768 (Minn. App. 1987) ("An appellate court may take judicial notice of a fact for the first time on appeal.").

overturn findings of fact unless they are clearly erroneous. *In re Welfare of A.D.*, 535 N.W.2d 643, 648 (Minn. 1995).

Before terminating parental rights, the district court must find that termination is in the child's best interests, and it must analyze: (1) the child's interests in preserving the parent-child relationship, (2) the parent's interests in preserving the parent-child relationship, and (3) any competing interests of the child. Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3). Competing interests include maintaining a stable environment, health considerations, and the child's preferences. *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "[T]he best interests of the child are the paramount consideration, and conflicts between the rights of the child and rights of the parents are resolved in favor of the child." *J.R.B.*, 805 N.W.2d at 902.

Here, the district court found that terminating L.S.'s parental rights was in her children's best interests because the physical, mental, and emotional needs of the children require stability. The district court recognized L.S.'s ongoing chemical-use issues, her children's exposure to methamphetamine, her inability to avoid dangerous men, and her inability to maintain a stable residence. The record supports the district court's findings. Therefore, the district court did not abuse its discretion by concluding that terminating L.S.'s parental rights was in her children's best interests. *See In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn. 1986) (recognizing the importance of stability in a child's life when deciding whether to terminate parental rights); *In re Welfare of A.J.C.*, 556 N.W.2d 616, 622 (Minn. App. 1996) (affirming termination when mother failed to comply with

her parental duties due to drug addiction and a tendency to involve herself in abusive relationships), *review denied* (Minn. Mar. 18, 1997).

L.S. asserts that the district court erred because it did not specifically consider her ability to retain a role as a "visitational parent." But district courts are not required to make such a finding. *See* Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3). District courts are not required to go into "great detail" when determining the best-interests factors. *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 711 (Minn. App. 2004).

L.S. also asserts that we should follow the reasoning of appellate courts in jurisdictions that have hesitated to terminate the parental rights of only one parent. L.S.'s argument is unpersuasive. Decisions from other jurisdictions are not binding on appellate courts in this state. *First Constr. Co. v. Tri-S. Mortg. Inv'rs*, 308 N.W.2d 298, 300 (Minn. 1981). Moreover, Minnesota permits terminating a person's parental rights when the other parent retains parental rights. *See* Minn. R. Juv. Prot. P. 42.10, subd. 1(b) (recognizing the ability to terminate one parent's rights but not the other's).

L.S. also asserts that the district court erred by failing to adequately address the best-interests factors pursuant to Minn. Stat. § 518.17, subd. 1(a) (2014). Section 518.17, subdivision 1(a) applies "for purposes of determining issues of custody and parenting time." District courts are not required to consider these factors in other proceedings. *See In re Paternity of B.J.H.*, 573 N.W.2d 99, 102 (Minn. App. 1998) (recognizing that Minn. Stat. § 518.17, subd. 1 (1996) applies to custody determinations).

L.S. finally relies on *In re Child of Evenson* to support her argument that district courts must consider the least restrictive alternative to terminating parental rights. 729

7

N.W.2d 632, 634 (Minn. App. 2007), *review denied* (Minn. June 19, 2007).  But *Evenson* addressed the transfer of legal and physical custody, not termination of parental rights. *Id.*  Moreover, in *Evenson*, we did not adopt a rule requiring district courts to consider the "least restrictive alternative." *Id.*  Thus, *Evenson* is unpersuasive.

The record supports the district court's findings of fact, which support its conclusions of law terminating L.S.'s parental rights.

**Affirmed.**

8