EDWARD PETERSON ET AL., APPELLEES, V. STATE OF
NEBRASKA ET AL., APPELLANTS.

FILED MAY 25, 1926. No. 24376.

1. **Highways:** CONSTRUCTION: ESTIMATES: ADMISSIBILITY. Plaintiffs submitted to the state of Nebraska through the "department of public works" a bid for the construction of a highway in Sioux county, pursuant to federal aid project No. 102A. The contract provides: "The contractor, in all cases, will be paid for the actual amount of work performed as shown by the 'final estimates.'" The final estimates were to be, but were not, made by the state engineer. The "chief of the bureau of roads," whom the contract designates as "the authorized representative of the engineer in charge of all work in the state," prepared, pursuant to the contract, estimates and therein certified that $81,867.29 had been paid to plaintiffs and that $278.30 was the remainder due them. Plaintiffs, as the work progressed, accepted payments aggregating the former sum and made no claim at any time that measurements, used as a basis for estimates, were inaccurate. *Held,* that the estimates prepared by the chief of the bureau of roads were admissible in evidence on the issue as to the amount due the contractors.

2. ———: GRADING CONTRACT: DETERMINATION OF AMOUNT DUE. Where a grading contract provides the manner in which the amount of different materials which are removed shall be determined as a basis for calculating the price of the work, and provides that the final estimate shall be signed by the state engineer, and that officer fails, or refuses, to sign such estimate, the court, in an action to recover a remainder due the con-

tractor, will follow the method indicated by the contract in determining the amount due.

3. **Evidence: HIGHWAYS: GRADING: SECONDARY EVIDENCE.** The measurements and cross-sections made during the progress of road building construction work by the project engineer, in the absence of fraud, or gross mistake, are the best evidence of the quantity and character of the materials removed, and expert evidence, based on measurements taken after the work has been fully performed, which enable the witnesses merely to express an opinion in respect of the quantity and character of the removed materials, as shown by the estimates, is incorrect, secondary and incompetent.

4. **Interest: CLAIMS AGAINST STATE.** The legislature has not provided by statute for payment of interest upon claims against the state. It follows that, in the absence of statute, or of an agreement therefor, such claims cannot be allowed. See *United States v. North Carolina*, 136· U. S. 211.

Opinion on motion for rehearing of case reported in 113 Neb. 546. *Former judgment of affirmance vacated and judgment of district court reversed, with directions.*

Heard before ROSE, DEAN, DAY, GOOD, and EBERLY, JJ., and REDICK, District Judge.

DEAN, J.

Peterson, Shirley & Gunther, a firm of Omaha contractors, submittted a bid to the department of public works, of Nebraska, wherein it agreed to construct an earth and sand clay road, in Smiley Canyon in Sioux county, for $68,613.97, pursuant to federal aid project No. 102A.

This action was begun in Lancaster county to recover $47,428.72 which plaintiffs allege is the remainder due them, and unpaid, for the construction of the above-mentioned public highway. A jury was waived. Upon trial to the court plaintiffs recovered a judgment for $30,305.54, with interest thereon. From the judgment so rendered the state appealed, and, after argument, an opinion was written which, in all respects, sustained the trial court's judgment. See former opinion, *Peterson v. State*, 113 Neb. 546.

Afterward, on motion of the state, a rehearing was

granted. Thereupon the case was again submitted to this court for reexamination following able arguments by the respective counsel. Subsequently a second rehearing was allowed, on the state's application, and much new matter, material to the issues, was presented at the rehearing arguments to which our attention was not formerly directed.

In passing it may be recalled that the federal government is concerned in the construction of "post roads," and the contract therefore provides that the construction works shall be "subject to the inspection and approval of the secretary of agriculture." 39 U. S. St. at Large, ch. 241, p. 355, sec. 6.

In respect of the officers in charge of state highway construction, the contract indicates the following officers and designates their duties:

The engineer in charge of the project is the secretary of the department of public works. He is also designated "the state engineer."

The inspector: "An authorized representative of the engineer assigned to make detailed inspection of any or all portions of the work or material therefor."

The division engineer: "An authorized representative of the engineer in responsible charge of all work and of all project engineers in the division to which he is assigned."

The project engineer: "An authorized representative of the engineer whose duties shall be to see that the work is carried out in accordance with the contract and specifications and perform such duties as are here described as duties of the project engineer."

The "chief of bureau of roads" is the "authorized representative of the engineer in charge of all work in the state."

Subsequent to the submission of and pursuant to plaintiffs' bid, the contract in suit was entered into under date of May 5, 1921, wherein, among other things, it is provided:

"After the grading is completed and before final payment is made therefor, the project engineer will cross-section the road and make careful measurement to determine the units of various items of work performed, as the

basis for final settlement. The contractor, in all cases, will be paid for the actual amount of work performed as shown by the final estimates."

Final acceptance by the department of public works is stipulated to mean a written acceptance by the department of public works followed by final payment which is to be in accordance with the engineer's final estimate.

The contract requires prospective bidders "to examine the plans, specifications, and special provisions carefully and make sure that the requirements are fully understood. They must satisfy themselves by personal examination of the road as to the nature of the material to be excavated, the location and accessibility of material and other local conditions affecting the contract." This is so that bidders shall inform themselves in respect of the work to be performed in the project. And this cautionary warning appears in the contract: "Note—Bidders' attention is called to paragraph 62, section 1, standard specifications regarding payment of estimates." Paragraph 62, so far as material here, follows: "Final acceptance by the department of public works is stipulated to mean a written acceptance by the department of public works followed by final payment in accordance with the engineer's final estimate." Any minor work, not specifically mentioned in the contract, but obviously necessary for the proper completion of the work, shall be executed in proper manner by the contractor and he "shall not be entitled to any extra or additional compensation for the same." Grading shall be estimated and paid for by the cubic yard and measurement shall be made "by cross-sectioning before and after excavation and the volumes determined by the average and area method."

The contract also contains this: "Special provisions covering section A of project No. 102, Sioux county. It is specifically provided and understood in submitting this bid that all explosives which may be required to blast any solid rock or brule clay in solidified form will be furnished to the contractor by the department of public works at a price of fifteen (15) cents per pound. * * * The above-men-

tioned explosive is composed of T. N. T. made up in cartridges of ½ pound size. No caps or fuses will be furnished."

The chief of bureau of roads testified that about "24,000 pounds T. N. T. and a few hundred pounds of dynamite were used in the project," and that ordinarily it was assumed that a pound of explosive would remove a yard of rock, although in some instances it takes more explosives. This evidence seems to support the state's contention that plaintiffs removed approximately 24,000 yards of rock. Plaintiffs contend that much more explosives were used, but there is testimony which tends to prove that they were used to remove quantities of earth on the expressed ground that it effected a saving for the contractors. True, the contractors had the right to use explosives in moving plow land, for which they received 38 cents a cubic yard, if they counted that the most economical method of removal. But the mere fact that explosives were so used did not entitle them to $1.80 a cubic yard for earth so removed, that being the contract price for the removal of solid rock. Clearly, plaintiffs had no right to so increase the amount of their compensation.

Notwithstanding the following provision in the contract, there is no record of any claim by the plaintiff company for "extra compensation:"

"In any case, where the contractor deems that extra compensation is due him for work or material not clearly covered in this contract nor ordered in writing by the engineer as an extra, as defined above, the contractor shall notify the engineer of his intention to make claim for such extra compensation before he begins the work upon which he bases the claim. If such notification is not given, or the engineer is not afforded proper facilities by the contractor for keeping strict account of actual cost as defined for extra work, the contractor hereby agrees to waive the claim for such extra compensation. * * * The claim must be passed upon by the department of public works."

The contract expressly provides that any variations from the plans and specifications which may be required by the

exigencies of construction will in all cases be determined by the engineer, or chief of bureau of roads, and that no such changes by the contractor will be permitted without the division engineer's written approval, and if the meaning of the requirements of the specifications are in doubt, the contractor shall refer the question to the secretary of the department of public works, whose decisions shall be final and binding on both parties.

If any variations were made from the plans and specifications, above referred to, there is nothing in the record to show that such variations were determined by the engineer, nor that the written approval of the division engineer was obtained therefor, nor does it appear that plaintiffs referred any question in respect of the "meaning" of the requirements of the "specifications" to the secretary of the department of public works for determination. That plaintiffs were well advised of the project into which they were about to enter appears in their acceptance of the conditions of the contract, which follows:

"We have carefully examined the plans and specifications for the grading, paving, draining and incidental work on the road directed above, and we have made a personal examination of the site, and have inquired into the local conditions affecting the work."

When the work was finally completed, E. H. Morey, "chief of bureau of roads," prepared an estimate wherein, following a tabulated statement of the work, he certified that $82,145.59 was the total sum earned by plaintiffs under their contract, and that the previous payments made to plaintiffs amounted to $81,867.29, leaving a remainder due them of $278.30 which remained unpaid.

It may be observed generally that, under the federal and state authorities, it is competent for parties, in this class of general construction work, to designate in the contract some person or official to pass upon and decide all disputed questions that may arise in the course of construction, and that his decision shall be final. *United States v. Gleason,* 175 U. S. 588; *Martinsburg & P. R. Co. v. March,* 114 U.

S. 549; *Chicago, S. F. & C. R. Co. v. Price*, 138 U. S. 185; *Kihlberg v. United States*, 97 U. S. 398; *Chapman v. Kansas City, C. & S. R. Co.*, 114 Mo. 542; *Williams v. Chicago, S. F. & C. R. Co.*, 112 Mo. 463, 34 Am. St. Rep. 403; *Katz-Craig Contracting Co. v. City of Cozad*, 101 Neb. 189; *Elliott v. Missouri, K. & T. R. Co.*, 74 Fed. 707. Plaintiffs contend, however, that the estimate in question is invalid because it was not signed by the state engineer. But, in view of the facts, the majority of the court hold that it is not necessary to decide this question.

The contract provides that the duty of the project engineer shall be to see that the work is carried out in accordance with the contract and specifications and to perform such duties as are described; and further, as above noted:

"After the grading is completed and before final payment is made therefor, the project engineer will cross-section the road and make careful measurement to determine the units of various items of work performed, as the basis for final settlement. The contractor in all cases will be paid for the actual amount of work performed as shown by the final estimates."

It is claimed by the plaintiffs that the project engineer has no authority to classify the work, but by the provision just quoted he is required to cross-section the road and make careful measurement "to determine the units of various items of work performed, as the basis for final settlement." The units referred to consist of solid rock, loose rock and ordinary excavation, as defined by the contract. The cross-sectioning and measurements to be made by the project engineer necessarily required the exercise of his judgment as to the character of the materials involved. They must show the various materials composing each section of the work and the quantity thereof. If this is not classification, by what other word shall we describe it? True, the classification of the project engineer is not final. It is subject to the revision or approval of the state engineer. But the latter acts upon the reports of the project engineer as the basis for his decision in the absence of controlling evidence

of their inaccuracy. Furthermore, the parties accepted and acted upon such reports, received them as approximately correct, and plaintiffs received payment from time to time in accordance therewith.

Plaintiff contractors now contend that the state engineer, and none other, is competent to sign the final estimate. But the failure of the engineer to sign the final estimate does not throw open the question of the amount of compensation to the unrestricted arbitrament of the court, as upon *quantum meruit,* in a case where the method for determining such amount is provided in the contract. Such failure may require the court to fix the amount, but it must do so in accordance with the terms of the contract, which provides for measurements and cross-sections by the project engineer. If these are not shown to be inaccurate or fraudulent, they must form the basis of the court's judgment in the same way that it was the basis for the final certificate of the state engineer, because it is so provided in the contract.

Plaintiffs rely on the evidence of certain expert witnesses who are said to be learned in technical knowledge of the subject-matter as it pertains to modern highway construction projects. But these witnesses, none of them, ever saw the workings while in process of construction. Nevertheless, they testified at great length. Their examination and inspection was made on view, and after the work was all completed. Is it to be expected that witnesses so selected, even though learned in their calling, could as accurately describe, under the facts before us, the length, the depth, the height, the quantity, and the classification of the material that was removed, with the same degree of accuracy that such measurements could be given by eye-witnesses who were constantly present? To illustrate: Credible eye-witnesses testified that packed sand was moved by plows and grading machinery. As opposed to this, shall we accept the opinion of experts, not eye-witnesses, that such material could not be so removed? And these witnesses conceded that their evidence was merely an expression of their best judgment.

The plaintiffs contend that the sole controversy arises over the classification of material called "packed sand," their position being that all packed sand must be classified as solid rock. The field notes and estimates show that much of this material, especially where it was found between two ledges of rock, was classified by the project engineer as solid rock; in fact, we think it is a proper inference from the testimony for the defendant, and not disputed by the plaintiffs, that all packed sand was classified as solid rock except where the same was actually moved by grading machinery. When it was so moved, it was classified as ordinary excavation, and unquestionably could not be termed solid rock. If it was entitled to some higher classification, the proper unit is not defined by the contract, and it could not be classified thereunder, and was therefore subject to the provision awarding extra compensation. But in order to secure this it was necessary for the contractor to notify the engineer in charge that he would claim extra compensation before beginning the work and afford the engineer proper facilities for keeping strict account of the actual cost thereof, in which event such cost plus 15 per cent. would be allowed. No such notice was given, nor was the actual cost of the work kept, and therefore the contractor waived any claim for extra compensation. Assuming the nonexistence of a final estimate approved by the state engineer, as above pointed out, we have the field notes and cross-sections made by the engineers, as required by the contract, and these measurements were made upon actual view of the project day by day as the work progressed. And this was the best evidence obtainable.

To adopt plaintiffs' procedure in obtaining evidence in this class of work would not only be making a new contract for the parties, but it would open wide the door to fraud, speculation and unnecessary litigation. And, from any viewpoint, such evidence, under the contract, is incompetent and is therefore without probative value.

The court, in the absence of statutory authority or of a provision therefor in the contract, erroneously allowed

plaintiffs to recover interest. The law is otherwise and has long prevailed. *In re Gosman,* 17 Ch. Div. (Eng.), 771, the master of the rolls, speaking for the court of appeals, summed up the law of England in this terse expression: "There is no ground for charging the Crown with interest. Interest is only payable by statute or by contract." In *United States v. North Carolina,* 136 U. S. 211, the court said: "A state is not liable to pay interest on its debts, unless its consent to do so has been manifested by an act of its legislature, or by a lawful contract of its executive officers." To the same effect are the following cases: *State v. Board of Public Works,* 36 Ohio St. 409; *Flint & P. M. R. Co. v. Board of State Auditors,* 102 Mich. 500; *Western & Atlantic R. Co. v. State of Georgia* (special judicial commission), 14 L. R. A. 438. And the same principle prevails in Nebraska. *Central Bridge & Construction Co. v. Saunders County,* 106 Neb. 484. Our attention has not been drawn to a contrary holding of any court and we know of none.

Upon a reconsideration of the entire case, the former opinion (*Peterson v. State,* 113 Neb. 546) and judgment, in so far as they are at variance with the views herein expressed, are vacated. The judgment of the district court is reversed and the cause is remanded, with instructions to render judgment in the sum of $278.30 in favor of the plaintiff company.

REVERSED.

DAY, J., dissents.