CITY OF CHADRON, APPELLANT, V. STATE OF NEBRASKA,
APPELLEE.

FILED JUNE 9, 1927. NO. 24896.

1. **Highways:** CHANGE OF GRADE: EXPENSE OF LOWERING CITY
WATER PIPES. A city of the second class obtaining its water
supply from outside the city limits, having its pipes beneath the
county roads by permission of the county authorities, holds such
right subject to the use of the roads for the public welfare and
travel; and whenever such use reasonably demands it, those in
charge of said roads may change the grade of the roads and, if it
be necessary to change the grade of the water pipe lines belong-
ing to the city, it is the duty of the city to make such change at
its own expense.

2. ———: ———: DESTRUCTION OF WATER PIPES: LIABILITY.
Those in charge of the grading of the public roads of the state
have no legal right to tear up and destroy the water pipes of a
city laid under such public road, without giving the city reason-
able notice and opportunity to change or relay its pipes; and
when, as in the circumstances of this case, those in charge of the
work for the state, in the scope of the work and to carry out its
general plan, so destroy the water pipes of the city, and the city
is duly granted leave to sue, the state will be held responsible
for the damages resulting from such act.

3. ———: ———: ———: DAMAGES. In such a case, the
city will not be allowed to recover damages for that portion of
its pipes disconnected from the part of the pipe line destroyed,
when such portion of the pipe line is not disturbed, except by
the disconnection, and is not destroyed or otherwise damaged;
but, under the rule as to the measure of damages adopted in this
case, will be allowed to recover the reasonable value of the pipes
destroyed, ascertained as of the date of their destruction.

APPEAL from the district court for Lancaster county:
JEFFERSON H. BROADY, JUDGE. *Reversed, with directions.*

*Greydon L. Nichols, G. T. H. Babcock, E. D. Crites* and
*F. A. Crites,* for appellant.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Goss, C. J.

The city of Chadron appealed from a dismissal, by the district court for Lancaster county, of its suit against the state. The sovereignty of the state rendering it immune from suit, the plaintiff presented its claim to the legislature of 1923 and was authorized by House Roll No. 718, approved May 3, 1923, to sue. The case was tried to the court under section 1103, Comp. St. 1922, which says that the court "shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require."

Chadron, classified as a city of the first class, owns and maintains its own water-works. It has a gravity system, obtaining its water by dams across the creek in the hills about seven miles south of the city. It began its service about 35 years ago with an 8-inch cast-iron pipe line. In 1911 this was supplemented by a 10-inch wood stave line; and supplemented further, about the time the controversy arose, by a new 14-inch wood stave pipe line which is not involved as an item of recovery. Portions of these lines were laid beneath the public roads.

In August, 1920, the state, through its department of public works and the board of county commissioners of Dawes county, as parties of the first part, entered into a contract with a contractor, as party of the second part, to build a road, known as federal aid project number 76A, between Chadron and the south line of Dawes county, of which Chadron is the county seat. This is a part of the highway connecting Alliance and Crawford. In the performance of the work of bringing this road to proper grade, the contractor encountered the iron water pipe and the old stave pipe in several places. The former had been laid about five feet and the latter about four feet underground. There

is testimony to show that there were informal conferences between the engineers of the project and the city officials whose duty it was to look after the water supply. There is testimony to the effect that a qualified promise was made by one of the engineers in charge for the state that the city would be reimbursed for damage caused by removal. Informally the city officials told those engaged on the work not to continue to reduce the grade so as to require the taking out of the water pipes. The city took no other steps, except by these conversations, unofficial on both sides save as the participants held the respective offices designated, to stop the grading. The contractor proceeded with his grading, with the result that the city claims about three miles of the stave line were destroyed and about half that quantity of stave pipe line disconnected and so made useless; and that it was put to an expense of nearly $2,000 to relay the iron pipe exposed and removed by the grading of the project. It asks damages totaling $13,691.92 with interest from January 1, 1921, covering the various items.

When the exigency arose, neither side treated the matter with the seriousness that such a situation would seem to demand. The city did not take action by injunction or otherwise to test the right of those who were in charge of and actually doing the grading to tear out those portions of the pipe lines that obstructed their reduction of the road to the projected grade; nor, to apply the language of the statute, guiding the courts where leave to sue the state is so granted, did those in charge for the state seem to proceed quite "according to justice and right, as upon the amicable settlement of a controversy." The evidence does not show any clear-cut official notice by the state to the city that the state intended to proceed with its grading, that it claimed the legal right to do so, and that the city should protect itself by relaying its pipe lines in advance of the grading. Those in charge of the execution of the project ordered the uncovering and tearing out of the pipes that were in the way. Of course, the qualified promise of the

state's engineer in charge, above referred to, could not bind the state. It was not within the scope of his agency. His work was to direct the preparation of the highway for travel in accordance with the plans and the contract entered into to carry those plans into effect.

The main questions arising in this case are: (1) Whether the city of Chadron had such an easement (or other right) in the public road as to be prior in right to that of the public, so that the city could not be required to change the grade of its water pipes at its own expense? If so, then any party desiring them lowered would be liable for the entire expense of taking them out and replacing them, so as to conform to the new grade of the highway. (2) Even if the above question is not answerable in the affirmative, but if, nevertheless, the defendant without proper preliminary notice and without legal warrant destroyed some of the lines and rendered other parts useless, what, if anything, is the defendant's responsibility, and, if the defendant state is liable, what is the proper measure of damages in the particular circumstances of this case?

At the outset it is pertinent to say that the construction and operation of the water-works system by the city was not the exercise of a governmental function, but rather in the nature of a private enterprise for the convenience of the municipality, its inhabitants and property owners. *Metropolitan Utilities District v. City of Omaha,* 112 Neb. 93.

It is fundamental that the right of the state to provide roads for the use of its citizens and for the public generally is a sovereign right. If the right to make them fit and safe is a proper exercise of the police power of the state, then it must follow that any private corporation or any municipality engaged in rendering service like that of a private corporation holds whatever rights it acquires in the public roads of the state subject to these two great elements of sovereignty. The inherent sovereignty of the state and the power of the legislature to supervise matters affecting

the safety and welfare of the public in its relation to the streets were signally upheld in *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549, this court holding that such power could not be bartered away by contract or otherwise. On error to the supreme court of the United States, the judgment of this court was in all things affirmed. *Chicago, B. & Q. R. Co. v. Nebraska,* 170 U. S. 57. Numberless cases might be cited upholding this well-established rule of law. Such being the rule, it would seem patent that neither the individual owners of adjoining land, as owners of the fee, by conveying an easement, nor Dawes county, by permitting an easement under the county roads, would thus be able to create a right, by "contract or otherwise," superior to the right of the public in said road. While such a road bears the additional burden of the water pipes, it must bear it without interference with all of the conventional and implied rights of the public to use the road in the best way to serve the public welfare.

In the view we take of the rights of the parties, it will be unnecessary to try to abstract from rather unsatisfactory and incomplete evidence the title of the city to the use of the road. Suffice it to say that some of the pipe lines ran through private property and some under public roads from about 1892; that all portions of the line involved were outside the city limits. Roads were later established over a part of the route where they did not exist before. It may be assumed as shown, for the purposes of this case, that the city had rights over all the route here involved either by virtue of deeds or by consent or acquiescence of the county. But wherever the route of the city's water pipes ran originally in a public road or wherever later a public road was established over the route of the pipe lines, the right of the public was dominant and the right or easement of the city was servient. It is presumed that, if the original establishment of a new road over the route occupied by the pipe line damaged the city in any actionable manner, those damages were claimed and compensation paid before the property came under the superior dominion of the coun-

ty or state. When the road was accepted and taken over in 1910 by the state as a part of the federal aid project, it took it with the water pipe lines and whatever rights the city had in the road, but that taking did not vary the rights of the city which were secondary to the primary rights of the public to such uses of and changes in the road as the public welfare might reasonably demand. This answers the first question under consideration in the negative, and it follows that it was the duty of the city upon proper notice and within a reasonable time to lower its water pipes so as to conform to any reasonable change of grade of the road.

The evidence indicates that neither the state nor the city actually realized the change necessary to be made until the contractor in grading the road came upon the pipes. Upon informal conferences, heretofore touched upon, the state proceeded, under direction of those in charge, to tear out the pipe lines, with the results heretofore indicated, without the formalities that would seem to be due in the circumstances. The state argues that, under the doctrine of *Benda v. State*, 109 Neb. 132, the state is not liable for the damages done to the property of the plaintiff by the servants of the state. In that case the damage was done by individual members of a state surveying party, on private property, where such members were without permission of the state engineer in charge, on a mission personal to themselves, and not in the scope of their employment. The case is not applicable for the reason that here the water pipes were in the field of operation of the state in grading the public road so as to make it conform to the general plan of the system. The act of destruction arose in and because of the performance of the work itself, and not aside from its scope. While, in the circumstances of this case, the state and its contractor had the ultimate legal right so to grade the road, yet to do so without reasonable and proper notice to the city and without giving it a fair opportunity and a reasonable time to lower the pipes or to remove them is, as we view the law, actionable.

It remains to consider the damages due the city.    It claims damages, not only for all stave pipe line actually destroyed, but also for that portion of the stave pipe line put out of commission, as well as for the cost of relaying the pipe, including the relaying of the cast-iron pipe which was torn out but not destroyed.    In no branch of the law is there more difficulty than in arriving at the proper measure of damages.    The law is not dogmatic in fixing the rules relating thereto.

"Definite rules which will measure the extent of recovery in all cases even of a particular class are difficult to formulate owing to the consideration which must be given in each case to its specific and perhaps peculiar surrounding circumstances.    Stated in broad terms, however, the measure of damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation, and with the duty upon the person injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within his reach."    17 C. J. 844, sec. 166.

Applying that principle, which seems fitting, to this case, we are of the opinion that the city is entitled to recover, but that its recovery should be limited to the reasonable value of the material destroyed in the stave pipe line; that it cannot recover for the value of that portion of the stave pipe line disconnected and put into disuse by reason of the destruction of part of the line; and that it cannot recover for the cost of relaying either the part of the stave line destroyed nor for the relaying of that portion of the iron pipe that was removed by the grading.    Fortunately, while neither party tried nor argued the case on the theory we have adopted, the proofs contain enough evidence upon which a judgment and decree can be based.    The testimony shows that 15,726 feet of stave pipes were torn out, but that 726 feet of this was salvaged by the city; that the reasonable value of the 15,000 feet of wood pipe completely

City of Chadron v. State.

destroyed, if new at the time of destruction, is $8,554; but that it should be considered as depreciated 40 per cent; and that its real value was therefore, as we compute it, $5,132.40. That we think, for the reasons given in this opinion, would have been the fair amount due, according to justice and right as upon the amicable settlement of a controversy, if the parties had settled when the controversy arose. The state should pay 7 per cent. interest on this amount from January 1, 1921.

For the reasons stated in this opinion, the judgment of the district court is reversed and the cause is remanded, with directions to enter judgment in favor of the city of Chadron against the state for $5,132.40, with interest at 7 per cent. from January 1, 1921, and costs.

REVERSED.

The following opinion on motion for rehearing was filed July 26, 1927. *Rehearing denied.*

Interest. When the state, engaged in business functions, commits a wrong and damages the property of another and that other duly obtains the sanction of the legislature to sue the state to secure an adjudication of the controversy, the court may, under the authority of such legislative sanction and under the authority of section 1103, Comp. St. 1922, where justice and right require it, include interest in a judgment rendered against the state.

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

A motion and brief for rehearing were filed herein by the state. The court is of the opinion that the motion should be overruled, but deem it advisable to discuss one point presented therein, namely, the complaint because the court allowed interest against the state.

On grounds of public convenience, it has long been the

general rule that interest is not to be awarded against a sovereign government unless its consent to pay interest has been manifested by an act of its legislature or by a lawful contract of its executive officers. *In re Gosman,* 17 Ch. Div. (Eng) 771; *United States v. North Carolina,* 136 U. S. 211; *State v. Board of Public Works,* 36 Ohio St. 409; *Peterson v. State,* 114 Neb. 612. In the last named case, this court said: "The legislature has not provided by statute for payment of interest upon claims against the state. It follows that, in the absence of a statute, or of an agreement therefor, such claims (meaning for interest) cannot be allowed." The distinguishing feature between the *Peterson* case and the present case is this: In the present case the legislature expressly gave the plaintiff the right to sue the state, but in the *Peterson* case the suit was brought in the district court after a disapproval of the claim by the board of public works and a disallowance by the state auditor, but without express sanction of the legislature. When the state undertakes business functions, as in this case, and while thus engaged commits a wrong, as it did here, and thereafter the state in a legislative capacity grants leave to the party wronged to sue it and the suit is conducted under a statute (Comp. St. 1922, sec. 1103) directing that the court "shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require," we are of the opinion that, if the case, irrespective of the sovereignty and personality of the parties, is such as justly to call for payment of interest, then the state should not be exempted from such payment by reason of its sovereignty. While the question was not considered at length in *Commonwealth Power Co. v. State,* 104 Neb. 439, yet in that case the act of the district court in allowing interest was expressly affirmed. The opinion hereto-

fore adopted in the case under consideration, *ante,* **p.** 650, is adhered to, and the motion for rehearing is

OVERRULED.