OTTO B. ASHBACH & SONS, INC. v. STATE.

78 N. W. (2d) 446.

July 6, 1956—No. 36,664.

*Miles W. Lord,* Attorney General, and *John H. Rheinberger,* Special Assistant Attorney General, for appellant.

*Roland J. Faricy, Harry G. Costello, Jr., B. Warren Hart,* and *Faricy, Moore & Costello,* for respondent.

DELL, CHIEF JUSTICE.

Action by Otto B. Ashbach & Sons, Inc., against the State of Minnesota to recover for a volume of excavation claimed due under a contract for highway construction work. The contract dated January 19, 1948, called for construction work by plaintiff on state trunk Highway No. 35, commencing 4.5 miles east of Soudan and extending to 3.5 miles southwest of Ely. The work to be performed consisted of (1) grading, excavating, and embanking; and (2) the placing of a twelve-inch gravel base and subbase on the section of highway included in the contract.

It was agreed that the contract had been satisfactorily completed by plaintiff, the controversy here centering around the meaning of the contract as it related to "rock cuts" and whether plaintiff had been paid in full therefor. Section 11.02 of the contract provided that for "rock cuts" plaintiff would be paid at the rate of $2.88 per cubic yard and further specified that:

"In rock cuts, the excavation will be measured as the volume within the grading section staked by the Engineer; plus the volume included between the staked backslopes and slopes distant 18 inches outside thereof, measured horizontally; plus the volume above a surface 18 inches below the staked grade of the roadbed, extended to the shoulder slopes. No overbreak beyond these limits will be measured."

Plaintiff contended that under this provision the state in its measurements of rock-cut excavations had failed to include some 11,000 cubic yards thereof for which plaintiff claimed payment at the rate of $2.88 per cubic yard. The trial court was called upon to construe the contract and under its construction determined that

plaintiff had not been paid for 2,734 cubic yards of such rock-cut excavations and accordingly that the defendant was indebted to plaintiff therefor in the sum of $7,873.92, plus interest, costs, and disbursements.

Included in the trial court's findings were the following:

"8. That under Section 2105.2B, M. H. D. Specs., excavation is classified as Class 'A', 'B', or 'C'.

"That section 2105.2B1, defines Class 'A' excavation as consisting of 'all materials of an earthy nature, however compact they may be, such as earth, loam, clay, indurated clay, hardpan, silt, sand, and loose or cemented gravel; and boulders or detached rocks each having an average diameter of two (2) feet or less.'

"That Section 2105.2B2 defines Class 'B' as excavation consisting of 'all ledge rock, and all boulders and detached rock, each having an average diameter of more than two (2) feet.'

"That Section 2105.2B3, M. H. D. Specs., defines Class 'C' excavation as consisting of 'all materials listed under Class "A" and "B", and any other material which may be encountered regardless of its nature.'

"9. That Special Provisions 11.01, at page 13 of the Proposal, provides that 'All excavation, except Special Swamp Excavation, between the stations tabulated below will be classified as Class "B" excavation. [Here follows a list of the stations referred to.]'

"10. That materials actually excavated by plaintiff within those stations listed above which were classified as Class 'B' excavation under the contract consisted of materials meeting the definition of Class 'B' excavation, as well as materials defined as Class 'A' excavation, under M. H. D. Specs.

"11. Section 11.02 of the Special Provisions provides that, 'In rock cuts, the excavation will be measured as the volume within the grading section staked by the Engineer; plus the volume included between the staked backslopes and slopes distant 18 inches outside thereof, measured horizontally; plus the volume above a surface 18 inches below the staked grade of the roadbed, extended to the shoulder slopes. No overbreak beyond these limits will be measured.'

"That Section 11.02 applies to Class 'A', 'B', or 'C' excavation whenever a rock cut is actually made.

"12. That 'grading section staked by the Engineer' as used in Section 11.02 of the Special Provisions is the cross section of the roadway to which excavation would be made if the markings on the stakes were followed exactly. That 'staked grade of the roadbed' as used in Section 11.02 of the Special Provisions is the top of the finished grade of the roadbed as required by the contract. That 'overbreak' as used in Special Provisions 11.02 is defined under Section 2105.2L5, M. H. D. Specs., as 'that material in rock cuts which is removed outside of the authorized slope lines.'

\* \* \* \* \*

"14. That under Section 11.02 of the Special Provisions plaintiff in rock cuts, in addition to the volume of excavation within the grading section staked by the engineer, is to be paid for a volume of excavation between the staked backslopes of the roadway and a parallel slope 18 inches beyond that point measured horizontally; and in the roadbed a volume of excavation between the grade to which excavation was required to be made (subgrade or limits of grading section staked by the engineer) and a surface 18 inches below the finished grade of the roadbed extended to the shoulder slopes. That this additional volume allowed under Section 11.02 in backslopes and roadbeds is computed by using as a multiple the severed surface area of the rock at the limits of the staked grading section. That plaintiff in rock cuts is entitled to this additional volume of excavation whether the material is actually excavated or not.

"15. That except in rock cuts plaintiff has been paid in full for all excavation within the grading section staked by the engineer regardless of classification of materials excavated. That in rock cuts plaintiff has been paid for the total volume of excavation within the grading section staked by the engineer, plus an additional volume of excavation not necessarily excavated, as follows:

"(1) At the backslopes—a volume of excavation between the staked backslopes and slopes distant 18 inches outside thereof, measured horizontally.

"(2) In the roadbed—a volume of excavation between the grade to which excavation was required to be made (subgrade) and a surface 18 inches below the staked grade of the roadbed (finished grade) extended to the shoulder slopes.

"(3) In a sub-excavation (excavation below the sub-grade) the volume of excavation performed within the excavation limits."

After such findings the trial court requested that the parties submit figures as to the number of cubic yards of rock-cut excavations not paid for by defendant. They were unable to agree as to such figures, and thereupon the trial court requested that additional evidence be presented on this issue. Based on such additional evidence, the trial court then made an additional finding as follows:

"That, except in rock cuts, plaintiff has been paid in full. That in rock cuts plaintiff has not been paid for a volume amounting to 2734 cubic yards of material from rock cuts. That said material, under Section 11.02 of the Special Provisions, should be paid for at the rate of $2.88 per cubic yard."

It was upon this additional finding that the court awarded plaintiff judgment in the sum of $7,873.92 with interest from August 7, 1949, and costs and disbursements. Subsequently, upon defendant's motion for amended findings or a new trial, the court struck from the findings that portion thereof which granted plaintiff its costs and disbursements, but otherwise denied such motion. Defendant takes this appeal from the judgment subsequently entered for plaintiff.

On appeal it is contended (1) that all rock-cut excavations as defined by the trial court have been fully paid for in accordance with Section 11.02 of the contract; and (2) that the trial court erred in awarding plaintiff interest on any amount found due.

■ Our function here is to determine whether there is evidence to support the trial court's finding that plaintiff had not been paid for 2,734 cubic yards of rock-cut excavation. As indicated by the findings, the trial court construed the contract to mean that the extent

for which rock-cut excavation was to be compensated included (1) the volume of excavation within the grading sections staked by the engineer; (2) the volume of excavation between the staked back slopes of the roadway and a parallel slope 18 inches beyond that point measured horizontally; and (3) the volume in the roadbed between the grade to which the excavation was required to be made and a surface 18 inches below the finished grade of the roadbed extended to the shoulder slope, the latter volume to be computed by using as a multiple the severed surface area of the rock at the limits of the staked grading section, and compensated for whether the material was actually excavated or not. Defendant does not challenge this interpretation of the contract but asserts that thereunder there is no evidence to establish that plaintiff was not paid for 2,734 cubic yards of rock-cut excavation as the court determined.

■ Plaintiff testified that under the court's construction of the contract there had been approximately 11,000 cubic yards of rock-cut excavation for which it had not been paid. Defendant thereupon produced figures showing that actually there were but 2,055 yards of rock excavations in the area of the back slopes of the project, and but 971 additional cubic yards in which some rock had been severed; and that of such amounts approximately 292 cubic yards had been measured and paid for by it. This left remaining 2,734 cubic yards of rock-cut excavations which the record indicates were not compensated for under the contract, and this figure was made the basis of the trial court's findings. In connection therewith the trial court asked defendant's counsel if the computation of such cubic yardage in the areas mentioned would be relevant if plaintiff were sustained in its claim that it was entitled to compensation for the volume of rock cuts from shoulder to shoulder and 18 inches below the surface. To this defendant's counsel answered, "That's right, your Honor." As indicated above, the trial court construed the contract as requiring compensation for the volume of rock-cut excavations from shoulder to shoulder and 18 inches below the surface, and it would therefore appear that the evidence outlined was sufficient to sustain its finding on this issue. While it would have been helpful had more

definite and tangible evidence been presented on this issue, we must conclude that the record, as it now appears before us, compels affirmance of the trial court's finding thereon. 1 Dunnell, Dig. (3 ed.) § 411, and cases cited.

■ Defendant also claims that the trial court erred in awarding interest on the indebtedness found due. M. S. A. 161.03, subd. 17, provides:

"When a controversy arises out of any contract for the construction or repair of state trunk highways * * * the state hereby waives immunity from suit in connection with such controversy and hereby confers jurisdiction on the district courts of the state to hear and try out such controversy in the manner provided for the trial of causes in the district courts."

Ordinarily, a sovereign state is not liable for interest except where expressly or by reasonable construction of a contract or statute it has placed itself in a position of liability therefor. See, Annotation, 24 A. L. R. (2d) 974. However, under what is described as a reasonable construction of statutes similar to § 161.03, subd. 17, it has been held that states waiving immunity from civil litigation by such enactments become liable for interest even though no reference thereto is made therein. Commonwealth v. Lyon, 24 Ky. L. 1747, 72 S. W. 323; Treadway v. Terrell, 117 Fla. 838, 158 So. 512; City of Chadron v. State, 115 Neb. 650, 214 N. W. 297, rehearing denied, 115 Neb. 657, 215 N. W. 137; Guercio v. State (La. App.) 15 So. (2d) 170; Philadelphia v. Commonwealth, 276 Pa. 12, 119 A. 723; see, Annotation, 24 A. L. R. (2d) 928, 979. Such decisions are based on the theory that since the state has consented to submit to civil litigation, it thereby has placed itself in the same position as other litigants and, like them, rendered itself liable for interest on any debts which the courts may determine are owing from it. In conformity with this viewpoint, we hold that in the instant case the trial court did not err in awarding interest against the defendant, although it properly disallowed plaintiff's costs and disbursements. State ex rel. Board of Christian Service v. School Board, 206 Minn.

63, 68, 287 N. W. 625, 627; State ex rel. Smiley v. Holm, 186 Minn. 331, 332, 243 N. W. 133.

The judgment appealed from is affirmed.

Affirmed.