Douglas O. **LIENHARD,**
Petitioner, Appellant,

v.

**STATE of Minnesota, et al.,**
Respondents.

No. C8–87–1002.

Supreme Court of Minnesota.

Nov. 23, 1988.

---

Fred H. Pritzker, Minneapolis, for appellant.

Mary Ann Bernard and Peter K. Halbach, Sp. Asst. Attys. Gen., St. Paul, for respondents.

COYNE, Justice.

Plaintiff Douglas O. Lienhard sued the State of Minnesota, Southfork Township, and Randolph Johnson to recover damages for injuries sustained when his motorcycle

collided with defendant Johnson's automobile. A jury awarded Lienhard damages in the net amount of $200,000 and apportioned causal negligence among the defendants in these percentages:

| | |
|---|---|
| State of Minnesota | 50% |
| Southfork Township | 45% |
| Randolph Johnson | 5% |

Following the denial of post-trial motions, the township and Johnson each paid Lienhard a proportionate share of the verdict, together with an additional sum which represented a portion of Lienhard's costs, disbursements, and interest. The State paid its share of the verdict—$100,000—but the parties reserved the question of the State's liability for costs, disbursements, and interest (including pre-verdict interest).

In response to Lienhard's motion to compel payment, the trial court ruled that the State was liable for its proportionate share of Lienhard's costs and disbursements but that, pursuant to the $100,000 limitation of liability provided by Minn.Stat. § 3.736, subd. 4 (1978)[1], the State was not liable for either pre-judgment or post-judgment interest. The court also declared the statute constitutional as applied in this situation.

The court of appeals ruled that the State was not bound by the provisions of chapter 549 and, therefore, was not liable for costs, disbursements, or interest. The court of appeals went on to declare that Minn.Stat. § 3.736, subd. 4 (1978) does not violate the equal protection clause of either the state or federal constitutions, 417 N.W.2d 119. We affirm in part and reverse in part.

Since the constitutionality of section 3.736 is implicated only if liability for costs, disbursements, and interest is limited by subdivision 4, our initial inquiry is directed to the basic question of the State's liability for such items. There is in section 3.736 no specific reference to costs, disbursements, or interest. The general rule is set out at Minn.Stat. § 3.736, subd. 1 (1978):

The state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant.

Minn.Stat. § 3.736, subd. 2 (1978) establishes the procedures for consideration and payment of claims:

Claims of various kinds shall be considered and paid only in accordance with the statutory procedures provided. Where there is no other applicable statute, a claim shall be brought pursuant to this section as a civil action in the courts of the state.

Together, subdivisions 1 and 2 of section 3.736 subject the State to tort liability as if it were a private individual, and when, as in the present case, the cause of action is prosecuted as a common law civil action, there being no applicable statutory procedure, the State's liability is the same as that of any private tortfeasor adjudged liable in a civil action—subject, however, to the limitation set out at subdivision 4 of section 3.736:

The total liability of the state and its employees acting within the scope of their employment on any tort claim shall not exceed:

(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case.

(b) $500,000 for any number of claims arising out of a single occurrence.

\*　　\*　　\*　　\*　　\*　　\*

To put it concretely, if the State were determined to be liable in tort for damages in an amount which did not implicate the $100,000 limitation—for example, $25,000—then the State, like any private person, would be liable for statutory costs pursuant to Minn.Stat. § 549.02 (1986), for reasonable disbursements pursuant to Minn.

---

1. Lienhard's cause of action arose on September 16, 1979, and the parties agree that the limitation in effect on that date is applicable here.

The limit of the State's liability has since been increased to $200,000. Act of June 14, 1983, 1983 Minn.Laws ch. 331, § 1, 2124, 2124.

Stat. § 549.04 (1986)[2], and interest pursuant to Minn.Stat. § 549.09 (Supp.1987).[3]

Moreover, even before the abolition of common law sovereign immunity from tort liability, it was generally recognized that in its proprietary capacity the State was bound by the statute on costs and disbursements (now sections 549.02 and 549.04). *See Bingenheimer v. Diamond Iron Mining Co.*, 237 Minn. 332, 356–57, 54 N.W.2d 912, 925 (1952); *State ex rel. Smiley v. Holm*, 186 Minn. 331, 332, 243 N.W. 133, 133–34 (1932). *But cf. State v. Bentley*, 224 Minn. 244, 247, 28 N.W.2d 770, 771 (1947) (State not bound by general law governing costs on appeal). Similarly, when the State waived sovereign immunity a prevailing party could be awarded interest. *Otto B. Ashbach & Sons, Inc. v. State*, 247 Minn. 573, 579, 78 N.W.2d 446, 450 (1956). Since the rationale for the rule of construction that the State is not bound by a statute unless named therein, Minn.Stat. § 645.27 (1986), lies in the doctrine of sovereign immunity, there is little reason to extend its application to the construction of a statute subjecting the State to liability for tort claims as if it were a private person.[4]

In this case, however, the State's proportionate share of liability for damages is $100,000, and the precise question before us is whether the $100,000 limitation on the "total liability of the State * * * on any tort claim" pursuant to section 3.736, subdivision 4, limits the State's liability for statutory costs, disbursements, and interest as well as its liability for traditional common law compensatory damages. Section 3.736 does not contain any specific reference to costs, disbursements, or interest. Neither does it contain any definition of the term "tort claim." The tenor of section 3.736 is that a "tort claim" is the claimant's demand for compensation due because of personal injury or property loss resulting from the tortious conduct of a State employee.

■ Statutory costs and disbursements, though includible in a judgment entered in a civil action, are "add-ons" rather than part of the cause of action itself. Costs and disbursements were unknown to the common law; they are creatures of statute. *Bayard v. Klinge*, 16 Minn. 221, 232–33 (1870). Costs and disbursements are unrelated to the magnitude of the claimant's injury. The amount of costs which may be taxed by the prevailing party is fixed by statute at $5 or $10. Minn.Stat. § 549.02 (1986). The reasonableness of the disbursements, including fees and mileage paid for service of process, to be allowed the prevailing party depends not so much on the size of the plaintiff's claim as on the complexity of proving the claim or of defending against it. Minn.Stat. § 549.04 (1986). In short, costs and disbursements are not part of the claim for compensation for personal injury; they are reimbursement of the expense of litigating the claim. We hold, therefore, that statutory costs pursuant to section 549.02 and reasonable disbursements pursuant to section 549.04 are not subject to the limitation on tort

---

2. Although the parties do not address the question, the court of appeals' assumption that the controlling statute with respect to disbursements that was in effect when the cause of action arose prompts us to note that the 1983 amendment of section 549.04 was expressly made applicable to pending litigation. Act of May 9, 1983, ch. 93, § 3, 1983 Minn.Laws 279, 279.

3. The plaintiff sought pre-verdict interest from July 1, 1984, pursuant to Minn.Stat. § 549.09, subd. 1(b) (1986). The 1984 amendment of section 549.09 was expressly declared applicable to

pending litigation. Act of Apr. 19, 1984, ch. 472, § 2, 1984 Minn.Laws 423, 424. *See also Asch v. Hous. & Redevelopment Auth. of St. Paul*, 256 Minn. 146, 152, 97 N.W.2d 656, 662 (1959).

4. Other jurisdictions have also concluded that the general provisions of a statute which makes costs and disbursements recoverable by the prevailing party permit their recovery by a tort claimant who prevails against the state. *Berek v. Metropolitan Dade County*, 422 So.2d 838, 840 (Fla.1982); *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 228–29 (Colo.1986).

claims provided by section 3.736.[5]

Interest, however, poses a quite different problem. Interest is directly proportional to the magnitude of the damages sustained by the claimant. Traditionally, pre-verdict interest was not allowed on an unliquidated claim such as a claim for personal injuries where the amount of damages depended upon contingencies or jury discretion. *Potter v. Hartzell Propellor, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971). The long accepted principle underlying the disallowance of interest was that while one who owed a liquidated sum could avoid interest by tendering payment, "one who cannot ascertain the amount of damages for which he might be held liable cannot be expected to tender payment and thereby stop the running of interest." *Id.* When, however, "damages were readily ascertainable by computation or reference to generally recognized standards," such as market value, interest from the date of loss was awarded "as damages" to compensate the plaintiff for the loss occasioned by the defendant's tort. *Id. See also Swanson v. Andrus*, 83 Minn. 505, 510, 86 N.W. 465, 467 (1901); *Varco v. Chicago, M. & St. P. Ry. Co.*, 30 Minn. 18, 22, 13 N.W. 921, 922 (1882).

■ In 1984, eight years after enactment of the state tort claims act, section 549.09 was amended to allow pre-verdict interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable or to stop the running of interest. Since such "interest" cannot be calculated until the amount on which interest is allowed has been fixed by verdict, it is apparent that pre-verdict interest is not conventional interest on a sum of money. Rather, it is an element of damages awarded to provide full compensation by converting time-of-demand (either by written settlement offer or commencement

of action) damages into time-of-verdict damages. *See Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973); *Wetz v. Thorpe*, 215 N.W.2d 350, 358 (Iowa 1974); *Bond v. City of Huntington*, 166 W.Va. 581, 599, 276 S.E.2d 539, 548 (1981) (pre-verdict interest on pecuniary loss to be included as part of general damage award in order to fully compensate injured party). *See also* C. McCormick, *Law of Damages*, § 50, at 205 (1935) (pre-verdict interest is compensation "allowed by law as additional damages for loss of use of the money due as damages"); D. Dobbs, *Remedies*, § 3.5, at 165 (1973). Minnesota's statutory provision for pre-verdict interest appears to represent a retreat from the defendant's point of view in favor of the plaintiff's perspective with respect to compensation. *See Hearings on H.F. No. 559 Before the Law Reform Subcomm. of the House Comm. on the Judiciary*, 73rd Leg., 1st Sess. (Apr. 13, 1983) (audio tape) (remarks of Rep. Schoenfeld, author of bill, stating that one of three purposes of bill was to compensate plaintiffs more fully); Note, *The Minnesota Pre–Judgment Interest Amendment: An Analysis of the Offer–Counteroffer Provision*, 69 Minn.L. Rev. 1401, 1403–10 (1985) (discussion of history of pre-judgment interest as a measure to provide full compensation for plaintiffs who negotiate reasonably). Because pre-verdict interest awarded pursuant to section 549.09 attaches to the verdict an additional compensatory sum, we hold that pre-verdict interest is subject to the limitation set by section 3.736, subdivision 4, on the State's liability on any tort claim.

■ Post-verdict and post-judgment interest, on the other hand, is compensation for the loss of use of money as a result of the nonpayment of a liquidated sum, for which liability has already been determined, not compensation for the injury giving rise to liability. *See McCormack v. Hankscraft Co., Inc.*, 281 Minn. 571, 573,

---

5. The limitation on liability for tort claims distinguishes the Minnesota tort claims act from those state tort claims acts which impose limitations on judgments. *See Berek v. Metropolitan Dade County*, 422 So.2d 838 (Fla.1982) (interpreting Fla.Stat. § 768.28(5) (1979)); *Lee v. Colorado Dep't of Health*, 718 P.2d 221 (Colo.1986) (interpreting Colo.Rev.Stat. § 24–10–114 (1982)).

161 N.W.2d 523, 524 (1968). For such conventional interest the State is liable to the same extent as any private judgment debtor. It is not part of the tort claim and is not subject to the limitation provided by section 3.736.

This distinction between pre-verdict interest and post-verdict interest, interest on a judgment, and costs and disbursements comports with policies underlying the state tort claims act. Requiring the State to reimburse the expenses of litigation and to pay interest on the amount for which it has been adjudged liable imposes on the State the same financial pressure which encourages private persons to avoid litigation and to pay judgments promptly. At the same time, recognizing pre-verdict interest as part of compensatory damages subject to the statutory limitation furthers the purposes which prompted the enactment of the limitation—the preservation of State funds and the facilitation of accurate budget forecasting.

Having concluded that pre-verdict interest is an aspect of compensatory damages and, therefore, is subject to the limitation provisions of section 3.736, we are required to address the contention that the limitation on tort claims imposed by Minn.Stat. § 3.736, subd. 4 (1978) is violative of the plaintiff's right to equal protection of the laws pursuant to the fourteenth amendment of the United States Constitution and article I, section 2 of the Minnesota Constitution.

■ Plaintiff now urges strict scrutiny of section 3.736, subdivision 4, on the ground that the limitation on his tort claim deprives him of a fundamental right ac-

corded by article I, section 8 of the Minnesota Constitution.[6] Inasmuch as plaintiff expressly rejected, in his argument to the trial court, any contention that he had been deprived of a fundamental right, we decline to entertain that contention, which is now raised for the first time in these proceedings. *Cf. State v. Engholm,* 290 N.W.2d 780, 784 (Minn.1980); *Ukkonen v. City of Minneapolis,* 280 Minn. 494, 501, 160 N.W. 2d 249, 253 (1968). We note in passing, however, that this court has previously tested the constitutionality of subdivision 3(h) of section 3.736 by determining whether there was a rational basis for the classification contained in the statute. *Green-Glo Turf Farms, Inc. v. State,* 347 N.W.2d 491, 494 (Minn.1984). *See also Bernthal v. City of St. Paul,* 376 N.W.2d 422, 424 & n. 5 (Minn.1985) (noting that all constitutional challenges of the municipal tort liability statute, Minn.Stat. § 466.04 (1984), have required application of the rational basis test).[7]

■ If, then, the constitutionality of subdivision 4 of section 3.736 under the equal protection clause of state and federal constitutions is to be tested by whether or not there is a rational basis for the limitation contained in the statute, we are of the opinion that the test is met.

In *Bernthal,* 376 N.W.2d at 425, we applied the two-pronged inquiry set out in *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514, 531 (1981), to determine whether a challenged classification is rationally related to achievement of a legitimate state purpose:

> by application of the rational basis test. We are aware of only one state which subjects such a statutory limitation to strict scrutiny. *Compare Brown v. Merlo,* 8 Cal.3d 855, 862 n. 2, 506 P.2d 212, 216 n. 2, 106 Cal.Rptr. 388, 392 n. 2 (1973); *Ryszkiewicz v. City of New Britain,* 193 Conn. 589, 598, 479 A.2d 793, 799 (1984) & *Estate of Cargill v. City of Rochester,* 119 N.H. 661, 667, 406 A.2d 704, 707 (1979) *with Pfost v. State,* 713 P.2d 495, 503 (Mont.1985).

**6.** Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property, or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.
Minn. Const. art. I, § 8.

**7.** Whether a limitation of the tort liability of a state or other governmental unit offends the equal protection clause is generally determined

1. Does the challenged legislation have a legitimate purpose? and

2. Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

Initially, plaintiff asserts that subdivision 4 of section 3.736 does not have a legitimate purpose. Governmental immunity for tort was abolished, plaintiff argues, because it was "an anachronism, without rational basis, and has existed only by the force of inertia." *Nieting v. Blondell,* 306 Minn. 122, 129, 235 N.W.2d 597, 601 (1975) (*quoting Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 216, 11 Cal.Rptr. 89, 92, 359 P.2d 457, 460 (1961)). Consequently, the argument continues, legislation which partially restores governmental immunity by limiting the extent of governmental liability can have no rational basis and, therefore, no legitimate purpose. Justice Traynor's words cannot, however, be taken as a sweeping declaration by this court that there is no rational basis for governmental immunity. While this court adopted the conclusion of the eleven courts which had judicially abolished the State's tort immunity, stating that an individual who suffers harm wrongfully inflicted "should have an opportunity to obtain a reasonable and adequate remedy against the wrongdoer," we declined to consider the constitutionality of sovereign immunity from the standpoint of either due process or equal protection and abolished the State's tort immunity prospectively. *Id.* 306 Minn. at 131, 235 N.W.2d at 602–03. Since the *Nieting* decision does not rest on constitutional grounds, the legislature was not precluded from restoring governmental immunity. *See Holytz v. City of Milwaukee,* 17 Wis.2d 26, 40, 115 N.W.2d 618, 625 (1962).

The effect of subdivision 4 of section 3.736 is, of course, the protection of the fiscal integrity and financial stability of the State—an effect which is no doubt reflective of the purpose of the statute. We today reaffirm our earlier recognition that the protection of a governmental entity's financial stability is a legitimate public purpose. *Bernthal,* 376 N.W.2d at 425; *AFSCME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 570–71 (Minn. 1983).

Moreover, it cannot be said that the lawmakers could not reasonably believe that the limitation on the State's liability on any tort claim would further that purpose. It is incumbent upon the legislature to balance myriad competing interests and to allocate the State's resources for the performance of those services important to the health, safety, and welfare of the public. These public services are of a scope and variety unknown in private industry; many of them are inherently dangerous; and most of them are required by law. As a result public entities are exposed to far greater risks and liability than a private individual. The legislative decision to limit liability on tort claims "proceeds from actual differences in the magnitude and character of the functions assumed by [the State] and in the effect of greater potential liability exposure on the [State's] ability to continue its governmental functions." *Lee v. Colorado Department of Health,* 718 P.2d 221, 227 (Colo.1986). As the United States Supreme Court has observed with respect to a damage limit for nuclear incidents,

> The liability-limitation provision thus emerges as a classic example of an economic regulation—a legislative effort to structure and accommodate "the burdens and benefits of economic life."

*Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 83, 98 S.Ct. 2620, 2636, 57 L.Ed.2d 595 (1978). Accord *Tibbetts v. Leech Lake Reservation Business Comm.,* 397 N.W.2d 883, 890 (Minn.1986).

There is in any case a practical limitation on the amount of damages which an injured person can recover: the resources of private individuals are not unlimited though they are sometimes nonexistent. While the amount of damages recoverable pursuant to section 3.736 is limited, it cannot be said that the limitation is, beyond a

reasonable doubt, either unreasonable or inadequate—particularly in light of the legislature's periodic review and revision of the limitations. *Compare* Act of Apr. 22, 1976, 1976 Minn.Laws ch. 331, § 33, 1282, 1293 *with* Act of June 14, 1983, 1983 Minn. Laws ch. 331, § 1, 2124, 2124.[8]

We conclude that the statutory classification contained in Minn.Stat. § 3.736, subd. 4 (1978), is rationally related to the legitimate government objective of insuring fiscal stability to meet and carry out the manifold responsibilities of government.

AFFIRMED IN PART AND REVERSED IN PART.

---

8. Our research indicates that, with one exception, all courts have upheld ceilings on governmental tort liability similar to section 3.736 under equal protection clauses of federal and state constitutions. *See, e.g., Estate of Cargill v. City of Rochester,* 119 N.H. 661, 666–68, 406 A.2d 704, 706–08 (1979), *appeal dismissed,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980) ($50,-000 tort claim ceiling upheld); *Cauley v. City of Jacksonville,* 403 So.2d 379, 385–87 (Fla.1981) ($50,000 per person and $100,000 per incident tort claim ceiling upheld); *Wilson v. Gipson,* 753 P.2d 1349, 1351–53 (Okla.1988) ($50,000 per person and $300,000 tort claim ceiling upheld, and reviewing cases from other jurisdictions). *But see Pfost v. State,* 713 P.2d 495, 503–05 (Mont. 1985) (holding that $300,000 tort claim ceiling failed strict scrutiny under the Montana equal protection clause).